# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANICE BEECHER, OMAR HAKKAOUI, ANDREA SMITH, SHANNON FRIEL, CATALIN POPESCU, IVAN DE LA CRUZ, NICOLE KAHHAN, PATRICIA SERIO, and MEGAN GATES, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>        Defendant. | Case No.:<br>2:25-cv-09555-MEF-LDW<br><br>**Document electronically filed**<br><br>Motion Date: April 20, 2026 |

## DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

STATEMENT OF FACTS ...............................................................................1

    A.    The Allegations and Claims ................................................. 1

    B.    Summary of the Grounds for Dismissal ............................. 9

ARGUMENT..............................................................................................12

I.    THE AC SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO IDENTIFY AN ALLEGED DEFECT, FAIL TO ESTABLISH ANY CAUSAL RELATION TO THEIR ALLEGED INCIDENTS, AND THEIR CLAIMS ARE BASED UPON SPECULATION AND CONJECTURE...........................................................................13

II.    THE EXPRESS WARRANTY CLAIMS SHOULD BE DISMISSED (COUNTS II, VII, X, XVI, XX, XXIII)......................................16

    A.    The NVLWs Do Not Cover Plaintiffs' Alleged Design Defects........16

    B.    Plaintiffs Have Also Failed to Establish a Breach of the NVLWs ................................................................................18

    C.    Beecher Fails to Establish a Violation of CT's Express Warranty Statute (Count V) ...............................................19

III.    PLAINTIFFS' IMPLIED WARRANTY CLAIMS SHOULD BE DISMISSED (COUNTS III, VIII, XI, XVII, XIX, XXII) ..........................20

    A.    Plaintiffs Fail to Establish that Their Vehicles Are Unmerchantable...............................................................20

    B.    The Implied Warranty Claims of Smith, Beecher, Kahhan, De La Cruz, and Serio Fail for Lack of Privity (Counts II, VII, XVI, XX).............................................................................21

    C.    Hakkaoui Fails to Establish a MA Implied Warranty Claim (Count IX) ................................................................23

IV.    DISMISSAL OF PLAINTIFFS' MMWA CLAIMS (COUNT IV) .............24

V.    THE STATUTORY AND COMMON LAW FRAUD BY OMISSION CLAIMS SHOULD BE DISMISSED (COUNTS I, IV, IX, XII, XIII, XIV, XV, XVIII, XXI, XXIII, XXIV) ................................25

    A.    Failure to Establish Pre-Sale Knowledge of the Alleged Defect........25

    B.    Failure to Establish Reliance and/or Causation ...............................28

i

C.   Failure to Establish a Duty to Disclose for Fraudulent Omission
     under Common Law (Count I) and the CT UPTA, AZ CPA,
     and MN DTPA (Counts II, IX, XVIII, XXIV) .................................30

D.   Smith's AZ CFA Claim Is Time-Barred (Count XVIII) ....................33

E.   The NJCFA Claim Should Be Dismissed (Count VI) ........................34

F.   Gates and Friel's Claims for Monetary Damages Under the MN
     DTPA and CO CPA Should Be Dismissed (Counts XIV,
     XXIV) ..........................................................................................35

G.   Hakkaoui's MA Chap. 93A Claim Fails for Additional Reasons
     (Count XII) ...................................................................................35

VI.  ALL EQUITABLE RELIEF CLAIMS, INCLUDING UNJUST
     ENRICHMENT AND INJUNCTIVE RELIEF, SHOULD BE
     DISMISSED (COUNTS V, VII, XII, XIII, XXIII, XXIV) ..........................36

A.   All Equitable Relief Claims Fail ......................................................36

B.   Plaintiffs Lack Article III Standing to Seek Injunctive Relief ...........36

C.   The Unjust Enrichment Claims Fail for Additional Reasons .............37

VII. PLAINTIFFS' "NATIONWIDE" CLASS CLAIMS SHOULD BE
     DISMISSED OR STRICKEN (COUNTS I-V) ..........................................39

CONCLUSION .......................................................................................40

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahern v. Apple*,
411 F. Supp. 3d 541 (N.D. Cal. 2019)...................................................33, 34

*Alrig USA Acquis. LLC v. MBD Realty LLC*,
331 A.3d 372 (Me. 2025).........................................................................32

*Alzado-Lotz v. Mut. Sec., Inc.*,
2023 WL 11903720 (D. Colo. Aug. 11, 2023) ................................................32

*Argabright v. Rheem Mfg. Co.*,
201 F. Supp. 3d 578 (D.N.J. 2016).........................................................39

*In re Arizona Theranos, Inc., Litig.*,
308 F. Supp. 3d 1026 (D. Ariz. 2018) .........................................................32

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................12

*Banh v. Am. Honda Motor Co., Inc.*,
2019 WL 8683361 (C.D. Cal. Dec. 17, 2019) ................................................18

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007).....................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................12

*Block v. Jaguar Land Rover N. Am., LLC*,
2019 WL 7184722 (D.N.J. Dec. 23, 2019).................................................33

*Brown v. Hyundai Mot. Am.*,
2019 WL 4126710 (D.N.J. Aug. 30, 2019) ........................................25, 26, 28

*Burgos v. American Honda Motor Co., Inc.*,
2024 WL 2108843 (C.D. Cal. May 7, 2024) ................................................14

*Burke v. Gen. Motors LLC*,
2011 WL 12584357 (Mass. Super. Ct. June 22, 2011) ...................................19

i

*Cavanaugh v. Subaru of Am., Inc.*,
   2017 WL 2293124 (Conn. Super. Ct. May 4, 2017)..........................................20

*Certified Question U.S. Dist. Court Order v. Philip Morris*,
   621 N.W.2d 2 (Minn. 2001)..............................................................................29

*Chiulli v. Am. Honda Mot. Co. Inc.*,
   690 F. Supp. 3d 1038 (N.D. Cal. 2023)............................................................17

*Cho v. Hyundai Mot. Co., Ltd.*,
   636 F. Supp. 3d 1149 (C.D. Cal. 2022)............................................................27

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013).........................................................................................37

*Coba v. Ford Motor Co.*,
   932 F.3d 114 (3d Cir. 2019)........................................................................16, 17

*Cohen v. Subaru of Am., Inc.*,
   2022 WL 714795 (D.N.J. Mar. 10, 2022) .........................................................31

*Cohen v. Subaru of Am., Inc.*,
   2022 WL 721307 (D.N.J. Mar. 10, 2022) .....................................................3, 36

*Cole v. NIBCO, Inc.*,
   2015 WL 2414740 (D.N.J. May 20, 2015).........................................................3

*Cooper v. Samsung Elecs. Am., Inc.*,
   374 F. App'x 250 (3d Cir. 2010)......................................................................34

*Copeland v. US Bank*,
   2018 WL 4145900 (D.N.J. Aug. 30, 2018) .......................................................13

*Curl v. Volkswagen of Am., Inc.*,
   871 N.E.2d 1141 (Ohio 2007)..........................................................................21

*Dack v. Volkswagen Grp. of Am., Inc.*,
   565 F. Supp. 3d 1135 (W.D. Mo. 2021)............................................................17

*David v. Volkswagen Grp. of Am., Inc.*,
   2018 WL 1960447 (D.N.J. Apr. 26, 2018)...................................................17, 37

ii

*Davidson v. Apple, Inc.*,
  2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ......................................................30

*Dawson v. Gen. Motors LLC*,
  2019 WL 3283046 (D.N.J. July 22, 2019) ..........................................................27

*Deras v. Volkswagen Grp. of Am., Inc.*,
  2018 WL 2267448 (N.D. Cal. May 17, 2018) ....................................................27

*Devane v. Church & Dwight Co.*,
  2020 WL 998946 (D.N.J. Feb. 28, 2020) ...........................................................37

*FDIC v. Bathgate*,
  27 F.3d 850 (3d Cir. 1994) .................................................................................13

*Felix v. Ganley Chevrolet, Inc.*,
  49 N.E.3d 1224 (Ohio 2015) ..............................................................................29

*Finigan-Mirisola v. DaimlerChrysler Corp.*,
  69 Mass. App. Ct. 1111 (2007) ..........................................................................20

*Fitzgerald v. Gamester*,
  658 A.2d 1065 (Me. 1995) ..................................................................................32

*Flynn-Murphy v. Jaguar Land Rover N. Am, LLC*,
  2021 WL 5448716 (D.N.J. Nov. 19, 2021) ........................................................39

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*,
  2010 WL 2813788 (D.N.J. July 9, 2010) ...........................................................22

*Francis v. Gen. Motors, LLC*,
  504 F. Supp. 3d 659 (E.D. Mich. 2020) .............................................................21

*Frappier v. Countrywide Home Loans, Inc.*,
  2013 WL 1308602 (D. Mass. Mar. 31, 2013) ....................................................29

*Functional Pathways of Tenn., LLC v. Cross*,
  2015 WL 13936024 (S.D. Fla. Nov. 20, 2015) ..................................................31

*Gant v. Ford Motor Co.*,
  517 F. Supp. 3d 707 (E.D. Mich. 2021) .............................................................38

iii

*Garcia v. Chrysler*,
   127 F. Supp. 3d 212 (S.D.N.Y. 2015) ...............................................17

*Garcia v. Medved Chevrolet, Inc.*,
   263 P.3d 92 (Colo. 2011) ..................................................................29

*Girard v. Toyota Mot. Sales, U.S.A., Inc.*,
   316 Fed. App'x. 561 (9th Cir. 2008) ................................................39

*Glass v. BMW of N. Am. LLC*,
   2011 WL 6887721 (D.N.J. Dec. 29, 2011)..................................20, 29

*Goins v. JBC & Assocs., P.C.*,
   2004 WL 2063562 (D. Conn. Sept. 3, 2004)......................................29

*Graff v. Brighthouse Life Ins. Co.*,
   109 F.4th 1118 (8th Cir. 2024)..........................................................38

*Granillo v. FCA US LLC*,
   2016 WL 9405772 (D.N.J. Aug. 29, 2016) ........................................26

*Granito v. Int'l Bus. Machines*,
   2003 WL 1963161 (Conn. Super. Ct. Apr. 16, 2003)........................38

*Graphic Comm'ns Local 1B Health & Welfare Fund A v. CVS
   Caremark Corp.*,
   850 N.W.2d 682 (Minn. 2014)...........................................................31

*Hickman v. Subaru of Am., Inc.*,
   2022 WL 11021043 (D.N.J. Oct. 19, 2022) .......................................36

*Hughes v. Panasonic Consumer Elecs. Co.*,
   2011 WL 2976839 (D.N.J. July 21, 2011)............................................4

*Iannacchino v. Ford Motor Co.*,
   451 Mass. 623 (Mass. 2008) ..............................................................23

*Jackson v. Am. Honda Motor Co.*,
   75 Mass. App. Ct. 1102 (2009) .........................................................19

*Johnson v. Microsoft Corp.*,
   2005-Ohio-4985 (2005) .....................................................................38

iv

*Kanter v. Barella*,
489 F.3d 170 (3d Cir. 2007)......................................................................13

*Kearney v. BMW AG*,
2018 WL 4144683 (D.N.J. Aug. 29, 2018) .............................................13

*Kopel v. Kopel*,
229 So. 3d 812 (Fla. 2017)......................................................................38

*Lee v. Toyota Mot. Sales USA, Inc.*,
992 F. Supp. 2d 962 (C.D. Cal. 2014).....................................................21

*Lessin v. Ford Motor Co.*,
2020 WL 6544705 (S.D. Cal. Nov. 6, 2020).............................................21

*Lewis v. Mercedes-Benz USA, LLC*,
530 F. Supp. 3d 1183 (S.D. Fla. 2021).....................................................28

*Liebler v. LG Elecs. U.S.A., Inc.*,
2015 WL 3561590 (D.N.J. June 4, 2015)..................................................29

*Lily Transp. Corp. v. Royal Instit. Servs., Inc.*,
64 Mass. App. Ct. 179 (2005) .................................................................35

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)................................................................................36

*Malleus v. George*,
641 F.3d 560 (3d Cir. 2011).....................................................................12

*Mandani v. Volkswagen Grp. of Am., Inc.*,
2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ...........................................28

*Mandelbaum v. Fiserv, Inc.*,
787 F. Supp. 2d 1226 (D. Colo. 2011) .....................................................38

*Maniscalco v. Brother Int'l (USA) Corp.*,
709 F.3d 202 (3d Cir. 2013).....................................................................34

*Matanky v. Gen. Mot. LLC*,
370 F. Supp. 3d 772 (E.D. Mich. 2019) ...................................................22

v

*McCabe v. Ford Mot. Co.*,
   774 F. Supp. 3d 349 (D. Mass. 2025)................................................................35

*McCabe v. Ford Motor Co.*,
   720 F. Supp. 3d 14 (D. Mass. 2024)..................................................................33

*McGuire v. BMW of N. Am., LLC*,
   2014 WL 2566132 (D.N.J. June 6, 2014).........................................................39

*McNair v. Synapse Grp. Inc.*,
   672 F.3d 213 (3d Cir. 2012)..............................................................................37

*McQueen v. BMW of N. Am., LLC*,
   2013 WL 4607353 (D.N.J. Aug. 29, 2013) ......................................................14

*MH v. Caritas Family Svcs.*,
   488 N.W.2d 282 (Minn. 1992)..........................................................................31

*Miller v. Ford Motor Co.*,
   2024 WL 1344597 (E.D. Cal. Mar. 29, 2024) ..................................................35

*Miller v. P.G. Lewis & Assoc.*,
   2007 WL 316446 (D.N.J. Jan. 30, 2007)...........................................................15

*Murphy v. Toyota Mot. Sales, USA, Inc.*,
   2021 WL 2801452 (C.D. Cal. July 1, 2021)......................................................23

*Nadeau v. Pitman*,
   731 A.2d 863 (Me. 1999)...................................................................................38

*Napoli-Bosse v. Gen. Motors LLC*,
   2022 WL 3585769 (D. Conn. Aug. 22, 2022) ..................................................23

*Napoli-Bosse v. Gen. Motors LLC*,
   453 F. Supp. 3d 536 (D. Conn. 2020)................................................................19

*Nat'l Waste Assocs., LLC v. TD Bank, N.A.*,
   2016 WL 4200095 (Conn. Super. Ct. June 21, 2016)........................................38

*Nicholson v. Jayco*,
   2016 WL 5463215 (N.D. Ohio Sep. 29, 2016)..................................................22

vi

*Omori v. Brandeis Univ.*,
  635 F. Supp. 3d 47 (D. Mass. 2022)...................................................................38

*Ponzio v. Mercedes-Benz USA, LLC*,
  447 F. Supp. 3d 194 (D.N.J. 2020)....................................................................39

*Powell v. Subaru of Am., Inc.*,
  502 F. Supp. 3d 856 (D.N.J. 2020)....................................................................24

*Pulte Home Corp., Inc. v. Countryside Cmty. Assoc., Inc.*,
  382 P.3d 821 (Colo. 2016) ...............................................................................38

*Rains v. Jaguar Land Rover N. Am., LLC*,
  2023 WL 6234411 (D.N.J. Sept. 26, 2023) .......................................................36

*Rieger v. Volkswagen Grp. of Am., Inc.*,
  2023 WL 3271116 (D.N.J. May 4, 2023)...........................................................39

*Rivers v. Amato*,
  2001 WL 1736498 (Sup. Ct. Me. June 22, 2001) ..............................................38

*Rollolazo v. BMW of N. Am., LLC*,
  2017 WL 1536456 (C.D. Cal. Feb. 3, 2017) .....................................................23

*Rowland v. Bissel Homecare, Inc.*,
  73 F.4th 177 (3d Cir. 2023)...............................................................................24

*Sanford v. Nat'l Ass'n for the Self-Employed, Inc.*,
  264 F.R.D. 11 (D. Me. 2012) ............................................................................29

*Santagate v. Tower*,
  64 Mass. App. Ct. 324 (2005) ..........................................................................36

*Sater v. Chrysler Grp.*,
  2015 WL 736273 (C.D. Cal. Feb. 20, 2015) .....................................................17

*Sauer v. Subaru of Am., Inc.*,
  2020 WL 1527779 (D.N.J. Mar. 31, 2020).......................................................16

*Scattaglia v. Mercedes-Benz USA, LLC*,
  2021 WL 5918475 (D.N.J. Dec. 15, 2021).........................................................16

vii

*Schechter v. Hyundai Mot. Am.*,
2019 WL 3416902 (D.N.J. July 29, 2019)......................................................28

*Schiesser v. Ford Mot. Co.*,
2016 WL 6395457 (N.D. Ill. Oct. 28, 2016) ..................................................29

*Shafik v. Aston Martin Lagonda of N. Am., Inc.*,
770 F. Supp. 3d 432 (D. Conn. 2025)............................................................19

*Sherman v. First Am. Title Ins. Co.*,
38 P.3d 1229 (Ariz. Ct. App. 2002) ..............................................................23

*Sloan v. Gen. Motors LLC*,
2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ................................................16

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)..........................................................................36

*In re Sony PS3 Other OS Litig.*,
551 Fed. App'x 916 (9th Cir. 2014) ...............................................................24

*Source One Fin. Corp. v. Rd. Ready Used Cars, Inc.*,
2014 WL 1013121 (Conn. Super. Ct. Feb. 14, 2014) ....................................23

*Sowa v. Mercedes-Benz Grp. AG*,
764 F. Supp. 3d 1233 (N.D. Ga. 2024)...........................................................18

*Speerly v. Gen. Motors, LLC*,
143 F.4th 306 (6th Cir. 2025).........................................................................18

*Stevenson v. Mazda Motor of Am., Inc.*,
2015 WL 3487756 (D.N.J. June 2, 2015)................................................20, 21

*In re Subaru Battery Drain Prod. Liab. Litig.*,
2021 WL 1207791 (D.N.J. Mar. 31, 2021).................................................24, 37

*Sweeny v. Toyota Motor Sales, U.S.A., Inc.*,
2023 WL 2628697 (C.D. Cal. Feb. 9, 2023) .............................................14, 27

*Szep v. Gen. Motors LLC*,
491 F. Supp. 3d 280 (N.D. Ohio 2020) ..........................................................31

viii

*Tatum v. Chrysler Grp., LLC*,
   2012 WL 6026868 (D.N.J. Dec. 3, 2012)..........................................................24

*Thomas v. Adams*,
   55 F. Supp. 3d 552 (D.N.J. 2014)......................................................................15

*Tijerina v. Volkswagen Grp. of Am., Inc.*,
   2023 WL 6890996 (D.N.J. Oct. 19, 2023) ...........................................24, 31, 40

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
   534 F. Supp. 3d 1067 (N.D. Cal. 2021).......................................................16, 35

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)......................................................................................36

*Varley v. United States*,
   2014 WL 3817150 (D.N.J. Aug. 4, 2014) .........................................................15

*Ventures Edge Legal PLLC v. GoDaddy.com LLC*,
   2016 WL 3570465 (D. Ariz. July 1, 2016).......................................................29

*VVIG Inc. v. Alvarez*,
   2019 WL 5063441 (S.D. Fla. Oct. 9, 2019).......................................................29

*Walgreen Co. v. Haseotes*,
   778 F. Supp. 3d 264 (D. Mass. 2025)................................................................38

*Weske Samsung Elecs., Am., Inc.*,
   42 F. Supp. 3d 599 (D.N.J. 2014)................................................................29, 30

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012)...........................................................................25

*Withrow v. FCA US LLC*,
   2021 WL 2529847 (E.D. Mich. June 21, 2021)................................................31

*Wozniak v. Ford Motor Co.*,
   2019 WL 108845 (E.D. Mich. Jan. 4, 2019) ...............................................18, 25

*Wyeth v. Ranbaxy Labs., Ltd.*,
   448 F. Supp. 2d 607 (D.N.J. 2006)....................................................................13

ix

*Yagudayev v. BMW of N. Am.*,
   2020 WL 6689799 (D.N.J. Nov. 13, 2020) .......................................................22

**Statutes**

15 U.S.C. § 2301.................................................................................................24

15 U.S.C. § 2310.................................................................................................24

Ariz. Rev. Stat. § 12-541....................................................................................33

Conn. Gen. Stat. Ann. § 42a-2-313 ...............................................................19, 20

Magnuson-Moss Warranty Act).................................................................3, 24, 25

**Other Authorities**

Fed. R. Civ. P. 8.............................................................................................14, 15

Fed. R. Civ. P. 9(b) ................................................................................ 1, 13, 14, 30

Fed. R. Civ. P. 12(b)(1)..........................................................................................1

Fed. R. Civ. P. 12(b)(6)..........................................................................................1

Defendant Volkswagen Group of America, Inc. ("VWGoA") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Amended Class Action Complaint ("AC") pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b).

## STATEMENT OF FACTS

This is Plaintiffs' second attempt at pleading, filed in response to VWGoA's first Motion to Dismiss that detailed the fatal deficiencies warranting dismissal of the original complaint ("MTD," ECF 12). The AC, however, fails to cure those deficiencies. Instead, it compounds them by adding 7 new Plaintiffs and 15 additional claims. But despite its voluminous appearance, the AC, like the original, (i) still consists primarily of insufficient conclusory and speculative allegations that lack the pleaded facts required to establish Plaintiffs' claims, and (ii) the facts that the AC does plead confirm the invalidity of those claims.

### A. The Allegations and Claims

In this putative class action, 9 named Plaintiffs, who reside and leased/purchased their vehicles in 8 states (AZ, CT, CO, FL, MA, ME, MN, and OH), claim that their 2021-2025 Volkswagen ID.4 vehicles are defectively designed because the touch control buttons for the Adaptive Cruise Control ("ACC"), located left of the center on the steering wheel, are purportedly "overly sensitive" and, according to Plaintiffs, could potentially cause the ACC to activate with a light or

1

inadvertent touch. Plaintiffs speculate that if this occurs, the vehicle might potentially "suddenly accelerate" to its last set cruise control speed (AC ¶¶ 3, 43-44, and pictures at ¶¶ 32, 36). Plaintiffs further postulate—as a "catch-all" theory without pleaded factual support—that if the vehicle accelerates in that fashion, an unspecified "software integration failure" may result in non-activation of the vehicle's IQ.Drive assistance features (including the Travel Assist, Front Assist, Active Side Assist, Rear Traffic Alert, Lane Assist, and Emergency Assist) (¶ 45).

Plaintiffs all claim to have experienced what they call "sudden acceleration" incidents while driving their vehicles, which they retroactively speculate to be attributed to the steering wheel ACC control buttons. However, as shown below, none of the Plaintiffs plead facts establishing that his/her alleged incident had anything whatsoever to do with the ACC controls, much less by any defect in them. Moreover, while Plaintiffs purport to allege "symptoms" or "effects" they claim to have experienced, they do not identify what they claim to be the design defect in the ACC control buttons or the IQ.Drive features. Plaintiffs do not plead what components of these systems are claimed to be defectively designed, how and why they are purportedly defectively designed, and the manner in which it is claimed they should have been designed. Plaintiffs likewise fail to plead facts establishing that these systems ever, in fact, malfunctioned, let alone caused their alleged incidents.

Despite these glaring deficiencies, Plaintiffs individually, and as proposed

2

representatives of putative classes of all owners/lessees of ID.4 vehicles manufactured between 2021 and 2025, assert claims only for alleged economic loss and equitable relief, under theories sounding in (i) common law fraud by omission (Count I), (ii) breach of express warranty (Counts II, VII, X, XVI, XX, XXIII), (iii) breach of implied warranty of merchantability (Counts III, VIII, XI, XVII, XIX, XXII), (iv) violation of the Magnuson-Moss Warranty Act ("MMWA") (Count IV), (v) unjust enrichment/restitution (Count V), (vi) violation of the CT, MA, OH, CO, FL, AZ, ME, and MN consumer fraud statutes in the respective states where particular Plaintiffs purchased/leased their vehicles (Counts IX, XII, XIII, XIV, XV, XVIII, XXI, XXIII,[1] XXIV), and (vii) violation of the New Jersey Consumer Fraud Act ("NJCFA") notwithstanding that no Plaintiff resided or purchased/leased a vehicle in the state of NJ (Count VI).[2]

As the materials cited in the AC make clear, the ACC function is inactive until

---

[1] The AC erroneously includes two Count XXIII's—for breach of express warranty under the ME UCC  and violation of the MN PCFA (pp. 168, 170).

[2] Plaintiffs' statutory fraud claims are asserted under the laws of the respective states of each Plaintiff's purchase or lease. Accordingly, VWGoA follows the AC in that regard. *Cole v. NIBCO, Inc.*, 2015 WL 2414740, at *5 (D.N.J. May 20, 2015) (when the parties agree upon which state's law applies to a Rule 12 motion, "the court will follow the lead of the parties"). Likewise, for each Plaintiff's common law claims, the law of the state of his/her purchase or lease applies, which for all Plaintiffs other than Serio, are the same as their states of residence. *Cohen v. Subaru of Am., Inc.*, 2022 WL 721307, at *10, 16-17 (D.N.J. Mar. 10, 2022) (analyzing NJ choice of law rules and applying law of state of purchase to common law warranty and tort claims for vehicle purchasers in 23 states).

a driver intentionally activates the ACC system and sets the ACC speed by a series of specific inputs (AC ¶ 1 n. 1). The subject vehicles' Owner's Manuals[3] state that for 2021-2023 model year vehicles (Plaintiffs Gates, Hakkaoui, Smith, Kahhan, Beecher, Serio), the driver must, in the first instance, manually turn the ACC system on by first pressing the cruise control button located on the steering wheel. Then, in order to operate the ACC system, the driver must press the "SET" button to set the desired speed (which may be adjusted through additional button presses) (Green Decl. Exh. F at 154-55; G at 151-52; H at 149-50). For 2024-2025 model year vehicles (Plaintiffs Popescu, De La Cruz, Friel), more intentional steps are required. The driver must first repeatedly press the cruise control mode button on the left of the steering wheel to select ACC, then press the "OK" button on the right of the steering wheel, and then press the "SET button" on the left of the steering wheel (*Id.,* Exhs. I at 162-63; J at 160-61).

For all subject vehicle models, a green indicator light will illuminate showing that ACC is active (*Id.*). The ACC system deactivates every time the vehicle's engine is turned off, and when the engine is turned back on, the driver must use the same steps (and press the same series of buttons) in order to manually activate the ACC

---

[3] Copies of the Owner's Manuals and NVLWs for Plaintiffs' vehicles are attached as Exhibits A-J to the accompanying Declaration of Peter Green ("Green Dec."). The Court may take judicial notice of them because they are directly cited and relied upon in the AC (¶¶ 24, 189). *Hughes v. Panasonic Consumer Elecs. Co.*, 2011 WL 2976839, at *8 (D.N.J. July 21, 2011).

system again. Otherwise, the system remains off and cannot simply "resume" to its last programmed speed even if the driver touches a particular ACC control button (*see* Green Dec. Exhs. G at 149-150; I at 161).

No Plaintiff pleads that he/she ever undertook those steps—in fact, no Plaintiff alleges that he/she ever engaged or used the ACC function at any time, much less on the day of his/her alleged incident. Nor does any Plaintiff allege that the green ACC indicator light showing that ACC is active ever illuminated on their dashboard(s) (AC ¶¶ 63-163). Plaintiffs have thus failed to establish that the ACC systems in their vehicles were ever "on" to begin with, and in order for the ACC to have been activated at the time of their alleged incidents, as they speculate, Plaintiffs would have to have undertaken the aforesaid multiple steps.

In addition, 7 of the Plaintiffs (Friel, Kahhan, De La Cruz, Hakkaoui, Popescu, Gates, and Serio), while intentionally making driving maneuvers at the time of their alleged acceleration incidents, do not even allege *any* contact at all (inadvertent or otherwise) with the steering wheel ACC control buttons either prior to or at the time of those alleged incidents:

(a) <u>Hakkaoui</u> alleges that in September 2022, his wife was driving the vehicle into her garage, purportedly experienced a so-called "sudden acceleration," and struck their garage door. However, Hakkaoui does not allege that he, or his wife, ever used the vehicle's ACC functions at any time, much less on the day of the

5

incident, or that his wife ever touched the steering wheel ACC control buttons prior to or during the alleged incident (AC ¶ 78).

(b)  Popescu alleges that on April 6, 2025, six weeks after having open-heart aortic replacement surgery, as he was driving into a parking space, his vehicle purportedly "suddenly accelerated" and struck a wall. However, he does not allege that he ever used the vehicle's ACC functions at any time, much less on the day of the incident, or that he ever touched the steering wheel ACC control buttons prior to or during the alleged incident (AC ¶ 100).

(c)  De La Cruz alleges that on October 22, 2025, his wife was driving the vehicle into their garage, when the vehicle purportedly "suddenly accelerated" and struck the garage wall. However, De La Cruz does not allege that he, or his wife, ever used the vehicle's ACC functions at any time, much less on the day of the incident, or that his wife ever touched the steering wheel ACC control buttons prior to or during the alleged incident (AC ¶ 115).

(d) Kahhan alleges that on June 30, 2025, she was driving her vehicle into a parking spot, purportedly experienced a so-called "sudde[n] accelerat[ion]," and struck a wall. However, she does not claim to have ever used the vehicle's ACC functions at any time, much less on the day of the incident, or that she ever touched the steering wheel ACC control buttons prior to or during the alleged incident (AC ¶ 127).

6

(e) <u>Serio</u> alleges that on August 5, 2025, she was driving her vehicle through a parking lot, purportedly experienced a so-called "sudde[n] accelerat[ion]," and struck a building. Incredibly, she further claims that after she placed the vehicle in reverse, it allegedly accelerated again and hit a post (AC ¶ 137). However, Serio does not allege that she ever used the vehicle's ACC functions at any time, much less on the day of the incident, or that she ever touched the steering wheel ACC control buttons prior to the alleged incident. Additionally, as explained in the Owners' Manual for her vehicle, the ACC system does not function when the vehicle is in reverse. Id., Green Decl. Ex. H at 146, 149.

(f) <u>Friel</u> alleges that on August 27, 2025, she was driving her vehicle into a parking space, purportedly experienced a so-called "sudde[n] accelerat[ion]," and struck a wall. However, she does not allege that she ever used the vehicle's ACC functions at any time, much less on the day of the incident, or that she ever touched the steering ACC wheel control buttons prior to or during the alleged incident (AC ¶ 148).

(g) <u>Gates</u> alleges that on July 21, 2025, her vehicle purportedly "suddenly accelerated" after intentionally accelerating her vehicle to pull out of a parking space, and struck a wall. However, like the others, does not allege that she ever used the vehicle's ACC functions at any time, much less on the day of the incident, or that she ever touched the steering wheel ACC control buttons prior to or during the

7

alleged incident (AC ¶ 158).

These Plaintiffs plead no facts establishing that the ACC system in their vehicles was even "on" at the times of their alleged incidents, much less any causal relation between the ACC controls and their incidents. The same holds true for the remaining two Plaintiffs, Beecher and Smith, who, while allegedly driving their vehicles into parking spaces, claim they "lightly brushed" the steering wheel controls with their hand, but likewise do not allege that they ever used the vehicle's ACC functions *at any time*, including on the day of their alleged incidents (AC ¶¶ 68, 89).

Plaintiffs' claims are based entirely upon speculation and conjecture, unsupported by pleaded facts. Further, no Plaintiff claims that he/she ever complained about the vehicle's ACC controls or IQ.Drive features to any Volkswagen dealer prior to their alleged incidents, much less that any dealer *ever* diagnosed a problem with their vehicles. Even Hakkaoui, the only Plaintiff who allegedly brought his vehicle to a Volkswagen dealer after the alleged incident, admits that his vehicle was inspected, test-driven extensively for 40 minutes over 9 miles, and found to have no problems (AC ¶ 80).

None of the Plaintiffs who continue to own their vehicles (Smith, Beecher, De La Cruz, Hakkaoui, and Gates) claim that they ever stopped driving them despite their alleged incidents, and none of them claim any further incidents. In fact, Hakkaoui proclaims that he and his wife continue to "rely on the [vehicle] to drop

8

off and pick up his children to and from school every day, averaging about 40 miles per day" (AC ¶¶ 73-82).

Finally, among the many deficiencies of Plaintiffs' fraud by omission claims—including their failure to identify the alleged defects they claim were not disclosed—none of the Plaintiffs identify anything from VWGoA that they actually saw or read prior to purchase/leasing which, they claim, should have provided the allegedly omitted information (AC ¶¶ 65, 75. 86, 97, 112, 124, 134, 145, 155).

## B.  Summary of the Grounds for Dismissal

As will be shown, the AC should be dismissed for the following reasons:

(1) Plaintiffs fail to identify the alleged "defects" upon which their claims are based and fail to plead facts establishing that their alleged incidents had anything to do with their vehicles' ACC controls or the IQ.Drive features, let alone any purported defect in them. Their claims are based solely upon conclusory speculation and conjecture, unsupported by pleaded facts (Point I);

(2) Plaintiffs' express warranty claims (Counts II, VII, X, XVI, XX, XXIII) fail because (a) Plaintiffs are claiming a design defect which is not covered by their vehicles' written express NVLWs; (b) Plaintiffs Smith (AZ) , Beecher (CT), Friel (CO), Kahhan (FL), De La Cruz (FL), Popescu (ME), Gates (MN), and Serio (OH) fail to establish that they ever presented their vehicles to a Volkswagen dealer with any complaint about the steering wheel ACC controls or IQ.Drive features, much

less that the dealer refused to repair any diagnosed problem; (c) Plaintiff Hakkaoui (MA) fails to allege a failure to repair a diagnosed problem with his vehicle during the NVLW period, since his vehicle was inspected, test-driven, and found to have no problems; and (d) as to Plaintiff Beecher (CT), the NVLW does not constitute an express warranty under the CT statute she alleges (Point II).

(3) The implied warranty of merchantability claims (Counts III, VIII, XI, XVII, XIX, XXII) fail because (a) Plaintiffs, who have driven their vehicles for years, who many continue to drive, and who have not established that their alleged incidents were caused by any defect in the ACC controls or IQ.Drive features, failed to plead facts establishing that their vehicles are unfit for the ordinary purpose of providing transportation—the required standard for unmerchantability; (b) Plaintiffs Smith, Beecher, Kahhan, De La Cruz, and Serio lack privity of contract with VWGoA, as required by AZ, CT, FL, and OH law; and (c) Plaintiff Hakkaoui (MA) has failed to identify a legally required standard that his vehicle failed to meet, as required by MA law (Point III).

(4) Plaintiffs' MMWA claims fail (a) for lack of subject matter jurisdiction since the MMWA requires more than 100 named plaintiffs for a class action in federal court; and (b) the MMWA claims are entirely derivative of Plaintiffs' state law warranty claims, and, thus, fail for the same reasons (Point IV).

(5) Plaintiffs' statutory and common law fraudulent omission claims (Counts

10

I, VI, IX, XII, XIII, XIV, XV, XVIII, XXI, XXIII, XXIV) should be dismissed because Plaintiffs (a) failed to establish that VWGoA had knowledge of the alleged design defect prior to their purchases/leases; (b) failed to establish reliance and/or causation upon any alleged omission; (c) failed to establish a duty to disclose the information claimed to have been concealed for common law fraudulent omission and the CT UTPA, AZ CPA, and MN DTPA claims; (d) Plaintiff Smith's AZ CPA fraud claim is time-barred; (e) Plaintiffs lack standing to assert an NJCFA claim because they neither reside nor purchased/leased their vehicles in NJ, and that statute cannot be applied extra-territorially; (f) Plaintiffs Gates and Friel's claims for monetary damages are barred under the MN DTPA and CO CPA; and (g) Plaintiff Hakkaoui's MA Chapter 93A claim fails because it is premised upon the same fatally deficient allegations as the common law fraudulent concealment claim (Point V).

(6) Plaintiffs' equitable relief claims, including unjust enrichment and injunctive relief (Counts V, VII, XII, XIII, XXIII, XXIV, Prayer for Relief), should be dismissed because they failed to allege, let alone establish, the lack of any adequate alternative legal remedy, which is required for equitable relief (Point VI).

(7) Plaintiffs' injunctive relief claims also fail for lack of Article III standing because they fail to plead the required facts establishing that they will suffer an imminent, concrete, and particularized future injury absent an injunction (*Id.*).

(8) Plaintiffs' unjust enrichment claims (Count V) also fail for the additional

11

reasons that (a) such claims cannot be maintained when there is an applicable contract—here, the NVLWs for Plaintiffs' vehicles; (b) Plaintiffs Beecher (CT), Friel (CO), Kahhan and De La Cruz (FL), Hakkaoui (MA), and Serio (OH) admittedly did not purchase or lease their vehicles from VWGoA, and thus failed to establish the legal requirement that their purchases/leases conferred a "direct benefit" upon VWGoA; and (c) since the unjust enrichment claims are premised on the same fatally deficient fraud-based allegations, they fail for the same reasons (id.).

(9) Finally, Plaintiffs' "nationwide" class claims should be dismissed or stricken because Plaintiffs, who reside and purchased/leased their vehicles in 8 states, lack Article III standing to assert claims on behalf of unnamed putative class members who reside or purchased their vehicles in other states in which the Plaintiffs did not purchase/lease their vehicles (Point VII).

## ARGUMENT

To survive a motion to dismiss, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). A claim has "facial plausibility" only when the plaintiff pleads facts, not conclusory allegations, which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These facts must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

12

In this regard, the "formulaic recitation of the elements of a cause of action" without supporting facts is not sufficient to meet this standard. *Copeland v. US Bank*, 2018 WL 4145900, at *2 (D.N.J. Aug. 30, 2018); *see Kearney v. BMW AG*, 2018 WL 4144683, at *4 (D.N.J. Aug. 29, 2018). Moreover, the Court need not accept "unsupported conclusions and unwarranted inferences," *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), and "[l]egal conclusions made in the guise of factual allegations…are given no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006); *see Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss").

Finally, Plaintiffs' fraud-based claims under common law and consumer fraud statutes are subject to the heightened pleading specificity requirements of Rule 9(b). *See*, *e.g.*, *FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (Rule 9(b) applies to common law and statutory fraud claims); *Kanter*, 489 F.3d at 175 (Rule 9(b) requires plaintiffs to plead with particularity facts—not conclusory assertions—establishing the "who, what, when, where, and how of the events at issue" that are claimed to constitute the alleged fraudulent acts and/or omissions of the defendant).

## I. THE AC SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO IDENTIFY AN ALLEGED DEFECT, FAIL TO ESTABLISH ANY CAUSAL RELATION TO THEIR ALLEGED INCIDENTS, AND THEIR CLAIMS ARE BASED UPON SPECULATION AND CONJECTURE

As shown above, Plaintiffs allege only purported "symptoms" or claimed

13

"experiences" with their vehicles, but have failed to identify what they are claiming to be the design defect in the ACC controls or IQ.Drive features, including what components are claimed to be defectively designed, how and why they were defectively designed, and the manner in which any such components should have been designed to render them non-defective. This is fatal, because merely alleging certain symptoms, effects, or experiences, without identifying the claimed "defect," fails to state a valid claim. *McQueen v. BMW of N. Am., LLC*, 2013 WL 4607353, at *7 (D.N.J. Aug. 29, 2013) (dismissing fraud-based claims because, "[t]hroughout her Complaint, Plaintiff merely identifies the effects of the alleged defect…[but] [t]here is no identification as to what precisely the defect is, other than a conclusory allegation that the transmission system is defective"); *Sweeny v. Toyota Motor Sales, U.S.A., Inc.*, 2023 WL 2628697, at *5 (C.D. Cal. Feb. 9, 2023) (dismissing complaint, holding conclusory allegations of "deficient materials" insufficient to allege defect under Rule 8, much less Rule 9(b)); *Burgos v. American Honda Motor Co., Inc.*, 2024 WL 2108843, at *3 (C.D. Cal. May 7, 2024) (complaint in putative class action dismissed because, although "purport[ing] to describe the 'Steering Defect,' it merely describes the symptoms of the defect, and does not identify the parts or components and what is defective about them").

Moreover, as shown above, Plaintiffs have failed to plausibly plead facts establishing that their vehicles' ACC controls or IQ.Drive features malfunctioned or

14

had anything to do with their alleged incidents. Standing alone, Plaintiffs' failure to plead that they ever utilized the ACC functions of their vehicles *at any time*, much less on the dates of their alleged incidents, is fatal to their claims because the ACC deactivates completely once the vehicle's engine is shut off, and if the engine is started again, the ACC must affirmatively be turned on again and programmed by undertaking the multiple steps discussed *supra*. None of the Plaintiffs plead that they ever did this, or that they ever witnessed the green indicator light on their dashboards confirming that the ACC was even "on." Moreover, 7 of the 9 Plaintiffs do not plead that they even touched or brushed against the steering wheel ACC control buttons prior to or at the time of their alleged incidents. No Plaintiff claims to have complained to any dealer about these systems prior to their alleged incidents.

Thus, the AC should be dismissed because, aside from conclusory allegations which are not accorded a presumption of truth, Plaintiffs' claims are based entirely upon speculation and conjecture, unsupported by pleaded facts. *Thomas v. Adams*, 55 F. Supp. 3d 552, 574 (D.N.J. 2014) (the court's "duty" is to dismiss conclusory claims that are based on "mere speculation or conjecture"); *Miller v. P.G. Lewis & Assoc.*, 2007 WL 316446, at *5 (D.N.J. Jan. 30, 2007) (dismissing claim because plaintiff "failed to allege any facts beyond mere speculation and conjecture"); *Varley v. United States*, 2014 WL 3817150, at *3 (D.N.J. Aug. 4, 2014) ("It is axiomatic that the pleading requirements of Rule 8 should state the *facts* underlying a plaintiff's

15

claim, not that plaintiff's self-serving conclusions, bold deducements, factless conjecture or alternative speculations").

## II. THE EXPRESS WARRANTY CLAIMS SHOULD BE DISMISSED (COUNTS II, VII, X, XVI, XX, XXIII)

### A. The NVLWs Do Not Cover Plaintiffs' Alleged Design Defects

The New Vehicle Limited Warranties ("NVLWs") applicable to Plaintiffs' vehicles provide for repair or replacement, by an authorized Volkswagen dealer, of a "defect in manufacturer's material or workmanship (i.e., mechanical defects)" within the prescribed warranty period (AC ¶ 192, 251, 302; NVLWs, Green Dec. Exhs. A-E). "Material or workmanship" warranties, such as these, do not cover alleged design defects. *Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019) ("The plain and ordinary meaning of the term 'defect[s] in materials or workmanship'…unambiguously excludes 'design' defects"); *Scattaglia v. Mercedes-Benz USA, LLC*, 2021 WL 5918475, at *11 (D.N.J. Dec. 15, 2021) (dismissing express warranty claims where, as here, the complaint alleged a design defect outside the scope of the "materials and workmanship" express warranty); *Sauer v. Subaru of Am., Inc.*, 2020 WL 1527779, at *7 (D.N.J. Mar. 31, 2020) (same); *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1085 (N.D. Cal. 2021) (same; dismissing express warranty claims under the laws of 28 states including AZ, CT, CO, FL, MA, MN, and OH); *Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017) (same; dismissing express

16

warranty claims under 32 states' laws including CO, FL, MA, MN, and OH).

Here, Plaintiffs are alleging a design defect that purportedly exists in all putative class vehicles (*See, e.g.,* AC ¶ 53) ("the capacitive steering wheel was a design defect," and the choice to "use the capacitive design" instead of "offering the ID.4 with actual buttons on the steering wheel" was a "mistake"). *David v. Volkswagen Grp. of Am., Inc.*, 2018 WL 1960447, at *5 n.5 (D.N.J. Apr. 26, 2018); *see also Coba v. Ford Motor Co.*, 932 F.3d 114, 123 (3d Cir. 2019) (plaintiff's assertion that "[a]ll of the vehicles" suffer from a "common" defect alleged a design defect that was not covered by the "material or workmanship" warranties); *Garcia v. Chrysler*, 127 F. Supp. 3d 212, 227 (S.D.N.Y. 2015) (same); *Sater v. Chrysler Grp.*, 2015 WL 736273, *4 (C.D. Cal. Feb. 20, 2015) (same).[4]

Thus, the express warranty claims should be dismissed.

---

[4] The same holds true with the AC's vague allegations concerning the putative class vehicles' "software." AC ¶¶ 43 (the ID.4's steering wheel ACC controls are "set by software to be too sensitive"); 44 (alleging an unidentified "software error in the system"); 45 (alleging a "software integration failure" of the IQ.Drive features)). *Dack v. Volkswagen Grp. of Am., Inc.*, 565 F. Supp. 3d 1135, 1147 (W.D. Mo. 2021) (alleged "software coding defect which causes the brakes to engage unexpectedly" was a design defect not covered by VWGoA's NVLWs); *Chiulli v. Am. Honda Mot. Co. Inc.*, 690 F. Supp. 3d 1038, 1051 (N.D. Cal. 2023) (alleged "programming or calibration defect," not claimed to vary from intended design, was a design defect that was not covered by defendant's "materials or workmanship" express warranty).

## B. **Plaintiffs Have Also Failed to Establish a Breach of the NVLWs**

In addition, there can be no claim for breach of an express warranty unless the alleged defect manifested, was presented to an authorized dealer for repair during the express warranty period, and the dealer failed to repair it pursuant to the warranty. *Sowa v. Mercedes-Benz Grp. AG*, 764 F. Supp. 3d 1233, 1266 (N.D. Ga. 2024) (dismissing claims under the laws of 17 states, including MA, CT, and OH; "Plaintiffs' express warranty claims must be dismissed because Plaintiffs did not seek repairs or replacements within the warranty period and have not plausibly alleged breach of the NVLW"); *Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 323 (6th Cir. 2025) (express warranty claims dismissed for lack of presentment for repair of alleged issue under CO, ME, and MN law); *Banh v. Am. Honda Motor Co., Inc.*, 2019 WL 8683361, at *10 (C.D. Cal. Dec. 17, 2019) (same; "none of these Plaintiffs ever asked Honda or a dealership to address this issue"); *Wozniak v. Ford Motor Co.*, 2019 WL 108845, at *2 (E.D. Mich. Jan. 4, 2019) (same; dismissing express warranty claims under 11 states' laws (including FL, MA, MN, and OH) where plaintiffs "have not pleaded that they presented their vehicles to a Ford dealership").

Here, with the exception of Hakkaoui, Plaintiffs do not claim to have ever presented their vehicles to a Volkswagen dealer with any complaint regarding the steering wheel ACC controls or IQ.Drive features, much less that the dealer refused

18

to repair a diagnosed problem with them (*see* AC ¶¶ 68, 89, 102, 116, 127, 137, 148, 158). As such, they have no valid claim for breach of express warranty.

MA Plaintiff Hakkaoui claims to have brought his vehicle to a Volkswagen dealer after his incident, but admits that the dealer inspected, test-drove, and found no problem with his vehicle (AC ¶ 80). Under MA law, a plaintiff cannot state a breach of express warranty claim where, as here, "[t]he problem that the plaintiff describe[s] could neither be duplicated, diagnosed, nor identified" by service personnel upon presentment for repair. *Burke v. Gen. Motors LLC*, 2011 WL 12584357, at *3 (Mass. Super. Ct. June 22, 2011); *see also Jackson v. Am. Honda Motor Co.*, 75 Mass. App. Ct. 1102 (2009) ("Mere complaints of a nonconformity, which, notwithstanding various diagnostic tests, cannot be substantiated, are insufficient to constitute a breach of any warranty, express or implied…").

## C. Beecher Fails to Establish a Violation of CT's Express Warranty Statute (Count V)

Beecher alleges that VWGoA breached the NVLW under Conn. Gen. Stat. Ann. § 42a-2-313 (AC ¶ 245-63). However, a "repair or replace" limited warranty, like the NVLW here, is not an "'express warranty' within the meaning of § 42a-2-313" and cannot sustain a claim under the statute. *Shafik v. Aston Martin Lagonda of N. Am., Inc.*, 770 F. Supp. 3d 432, 439–40 (D. Conn. 2025); *Napoli-Bosse v. Gen. Motors LLC*, 453 F. Supp. 3d 536, 546 (D. Conn. 2020) (dismissing CT express

19

warranty claims because "GM's limited [repair or replace] warranty is not an express warranty under Conn. Gen. Stat. § 42a–2–31").

## III. PLAINTIFFS' IMPLIED WARRANTY CLAIMS SHOULD BE DISMISSED (COUNTS III, VIII, XI, XVII, XIX, XXII)

### A. Plaintiffs Fail to Establish that Their Vehicles Are Unmerchantable

The implied warranty of merchantability is not a guarantee of perfection; it merely "provides for a minimum level of quality" which, for automobiles, is only breached if "a defect renders the vehicle unfit for its ordinary purpose of providing transportation for its owner." *Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756, at *12 (D.N.J. June 2, 2015); *Cavanaugh v. Subaru of Am., Inc.*, 2017 WL 2293124, at *4 (Conn. Super. Ct. May 4, 2017) (same); *Finigan-Mirisola v. DaimlerChrysler Corp.*, 69 Mass. App. Ct. 1111 (2007) ("[A] breach of the implied warranty of merchantability occurs only where a defect is so basic as to render the vehicle unfit for its ordinary purpose of providing safe, reliable transportation")

Here, as shown *supra*, in addition to failing to identify the defect they are claiming, Plaintiffs failed to plead facts establishing that their vehicles' ACC controls or IQ.Drive features ever actually malfunctioned or had anything to do with their alleged incidents. In addition, none of the Plaintiffs whose vehicles were not declared "total losses" from the alleged incidents ever stopped driving their vehicles or claim to have ever experienced any further incidents. *Glass v. BMW of N. Am.*, LLC, 2011 WL 6887721, at *15 (D.N.J. Dec. 29, 2011) ("The Court further notes

20

that Ms. Glass still drives her MINI Cooper today…[A]lthough Plaintiff's MINI Cooper may not have fulfilled Plaintiff's expectations, Plaintiff does not allege, and this Court cannot find, that Plaintiff's MINI Cooper fails to provide a minimum level of quality, which is all the law requires"); *Stevenson*, 2015 WL 3487756, at *13 (continued use of vehicle showed the lack of a valid implied warranty claim); *Lee v. Toyota Mot. Sales USA, Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (dismissing implied warranty claim because "basic inquiry" is "whether the vehicle was fit for driving," and "[p]laintiffs have not alleged that they stopped using their vehicles").

Since Plaintiffs have not established that their vehicles were unmerchantable at the time of sale/lease, their implied warranty claims should be dismissed.

## B. The Implied Warranty Claims of Smith, Beecher, Kahhan, De La Cruz, and Serio Fail for Lack of Privity (Counts II, VII, XVI, XX)

Under the laws of AZ, CT, FL, and OH, there can be no claim for breach of implied warranty in the absence of privity of contract between the plaintiff and defendant. *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 678 (E.D. Mich. 2020) (dismissing AZ and CT implied warranty claims where vehicles purchased from authorized dealer, not defendant); *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007) ("[P]urchasers of automobiles may assert a contract claim for breach of implied warranty only against parties with whom they are in privity"); *Lessin v. Ford Motor Co.*, 2020 WL 6544705, at *8 (S.D. Cal. Nov. 6, 2020) (CT

21

and FL Plaintiffs "lack privity required for their implied warranty claims because they did not purchase their Vehicles from Ford").

Plaintiffs Smith (AZ), Beecher (CT), Kahhan (FL), De La Cruz (FL), and Serio (OH) admit that they did not purchase or lease their vehicles from VWGoA (AC ¶¶ 64, 85, 111, 123, 133). They, therefore, lack the required privity of contract with VWGoA, and their implied warranty claims should be dismissed.

Plaintiffs plead no facts establishing any exception to the privity requirement based on (i) purported "direct dealings" with VWGoA's "agents" (i.e., dealerships) or as (ii) "third-party beneficiaries" of unidentified "contracts between Defendants and their dealers" or of VWGoA's implied warranties (Id., ¶¶ 209, 276, 396).[5] "[C]ourts in this Circuit have observed that 'automobile dealerships generally are not agents of automobile manufacturers regarding the selling of vehicles…," *Yagudayev v. BMW of N. Am.*, 2020 WL 6689799, at *10 (D.N.J. Nov. 13, 2020); *Nicholson v. Jayco*, 2016 WL 5463215, at *17 (N.D. Ohio Sep. 29, 2016), and Plaintiffs fail to plead facts establishing the legal requisites of any such "agency." *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, 2010 WL 2813788, at *16 (D.N.J. July 9, 2010); *Matanky v. Gen. Mot. LLC*, 370 F. Supp. 3d 772, 786 (E.D. Mich. 2019) (dismissing CT and OH implied warranty claims for lack of privity,

---

[5] The AC makes no "agency" or "third-party beneficiary" allegations with respect to the AZ implied warranty cause of action (Count XIX). Nor does the AC does assert an implied warranty claim under OH law.

despite "conclusory allegation" that authorized dealership was defendant's "agent").

Additionally, no "third-party beneficiary" exception exists under CT or FL law (Beecher, Kahhan, and De La Cruz), *Source One*, 2014 WL 1013121, at *5; *Napoli-Bosse v. Gen. Motors LLC*, 2022 WL 3585769, at *7 (D. Conn. Aug. 22, 2022), *aff'd*, 2023 WL 7485796 (2d Cir. Nov. 13, 2023); *Murphy v. Toyota Mot. Sales, USA, Inc.*, 2021 WL 2801452, at *9 (C.D. Cal. July 1, 2021), and Smith (AZ) and Serio (OH) fail to plead facts establishing the strict requirements for a "third party beneficiary" exception under the laws of those states.[6]

## C. <u>Hakkaoui Fails to Establish a MA Implied Warranty Claim (Count IX)</u>

Under MA law, in the absence of a claim for personal injury or property damage, a claim for breach of implied warranty requires that the pleading "identify a legally required standard that the vehicles were at least implicitly represented as meeting but allegedly did not." *Iannacchino v. Ford Motor Co.*, 451 Mass. 623 (Mass. 2008). Plaintiff Hakkaoui, who does not seek recovery for any personal injury or property damage, fails to allege any "legally required standard" that his

---

[6] AZ law requires that the contract itself indicate an explicit intention "to directly benefit that person." *Sherman v. First Am. Title Ins. Co.*, 38 P.3d 1229, 1232 (Ariz. Ct. App. 2002). The AC identifies no such contract. OH law applies an "intent to benefit" test which requires that the manufacturer knew it was manufacturing the good for the particular consumer and had exact knowledge of the particular consumer's needs and requirements. *Rollolazo v. BMW of N. Am., LLC*, 2017 WL 1536456, at *16 (C.D. Cal. Feb. 3, 2017). The AC pleads no such facts.

vehicle failed to meet. As such, his implied warranty claim should be dismissed.

## IV.  DISMISSAL OF PLAINTIFFS' MMWA CLAIMS (COUNT IV)

This Court lacks subject matter jurisdiction over Plaintiffs' claims under the Magnuson-Moss Warranty Act ("MMWA"). The MMWA provides that "[n]o claim shall be cognizable" in federal court "if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C). The Third Circuit has confirmed that the MMWA's 100-plaintiff jurisdictional requirement is controlling, notwithstanding that subject matter jurisdiction over non-MMWA class claims might otherwise be available under the Class Action Fairness Act. *Rowland v. Bissel Homecare, Inc.*, 73 F.4th 177, 183 (3d Cir. 2023). Here, since this putative class action involves only four named Plaintiffs, the MMWA claims should be dismissed accordingly. *Id.*; *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 885 (D.N.J. 2020); *Tijerina v. Volkswagen Grp. of Am., Inc.*, 2023 WL 6890996, at *22 (D.N.J. Oct. 19, 2023); *In re Subaru Battery Drain Prod. Liab. Litig.*, 2021 WL 1207791, at *19 (D.N.J. Mar. 31, 2021) (dismissing MMWA claims in action with less than 100 named plaintiffs; "[P]laintiffs may not use CAFA as a means to evade the explicit jurisdictional requirements of the MMWA").

Additionally, claims under the MMWA are entirely derivative of state warranty law. 15 U.S.C. § 2301(7); *Tatum v. Chrysler Grp., LLC,* 2012 WL 6026868, at *8 (D.N.J. Dec. 3, 2012); *In re Sony PS3 Other OS Litig.*, 551 Fed.

App'x 916, 920 (9th Cir. 2014). Since Plaintiffs' state law express and implied warranty claims fail, their MMWA claims also fail accordingly.

## V.   THE STATUTORY AND COMMON LAW FRAUD BY OMISSION CLAIMS SHOULD BE DISMISSED (COUNTS I, IV, IX, XII, XIII, XIV, XV, XVIII, XXI, XXIII, XXIV)

### A.   Failure to Establish Pre-Sale Knowledge of the Alleged Defect

To state an omission claim, Plaintiffs must plead facts (not mere conclusions) establishing that VWGoA *knew* of the alleged defect prior to the time that they purchased/leased their vehicles. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.5 (9th Cir. 2012) (failure to disclose a defect of which the manufacturer is not aware does not constitute an unfair or fraudulent practice); *Brown v. Hyundai Mot. Am.*, 2019 WL 4126710, at *6-8 (D.N.J. Aug. 30, 2019) (dismissal of statutory and common law fraud claims where, as here, plaintiff failed to sufficiently allege defendant's pre-sale knowledge of alleged defect); *Wozniak v. Ford Mot. Co.*, 2019 WL 108845, at *3 n.5 (E.D. Mich. Jan. 4, 2019) (omission-based fraud claims requires pre-sale knowledge of the alleged defect). Plaintiffs have failed to do so.

The AC alleges two purported sources, but neither, let alone both, establish pre-sale knowledge. First, Plaintiffs cite 54 anonymous unverified third-party complaints made to NHTSA (AC ¶¶ 49-52). However, *only 12* complaints make any reference to the ACC or its controls on the steering wheel, and *only five* of them— scattered over the course of four years—state that the complainant claimed to have

25

inadvertently touched or activated the ACC controls.[7] In addition, many of these cited NHTSA complaints were filed *after* the named Plaintiffs purchased/leased their vehicles, and cannot, as a matter of law, establish "pre-sale" knowledge of anything. *Brown*, 2019 WL 4126710, at *7; *Granillo v. FCA US LLC*, 2016 WL 9405772, at *9 (D.N.J. Aug. 29, 2016) (post-sale complaints cannot "support an inference that defendant had the requisite knowledge as of" the date that the purchases occurred).

Specifically, as to the Plaintiffs:

- Hakkaoui, Smith, and Kahhan - only 3 NHTSA complaints pre-dated their purchases, and none of those make any reference to the ACC or its controls on the steering wheel.

- Serio - only 7 NHTSA complaints pre-dated her lease, and of them, only 2 make any reference to the ACC or its controls on the steering wheel and neither alleges inadvertent touching or activation of the ACC controls.

- Beecher - only 18 pre-dated her lease, and of them, only 6 make any reference to the ACC or its controls on the steering wheel, and only 2 of those allege inadvertent touching or activation of the ACC controls.

- Popescu - only 25 pre-dated her lease, and of them, only 7 make any reference to the ACC or its controls on the steering wheel, and only 2 of those allege inadvertent touching or activation of the ACC controls.

- For Gates, 41 pre-dated her purchase; 43 pre-dated Friel's lease; and 52 pre-dates De La Cruz' purchase. However, for each of them, only 12

---

[7] Only 7 cited NHTSA complaints reference ACC or the steering wheel controls without claiming inadvertent activation: 11527690, 11576674, 11550130, 11563099, 11593929, 11638342, and 11685187 (AC ¶¶ 49-52). The only 5 cited NHTSA complaints which refer to inadvertent activation are 11604686, 11541568, 11604230, 11605013, and 11625016 (*id.*). The remaining 42 NHTSA complaints cited in the AC do not refer to the ACC function or the steering wheel controls (*id.*).

make any reference to the ACC or its controls, and of those 12, only 5 allege inadvertent touching or activation of the ACC controls.

These minuscule numbers of anonymous unverified pre-sale/lease complaints do not come close to establishing pre-sale knowledge of a design defect claimed to exist in hundreds of thousands of putative class vehicles (AC ¶ 26). In fact, even if all 54 NHTSA complaints were relevant and pre-dated all Plaintiffs' transactions— neither of which is true—this would still not come close to the "unusually high number" of complaints necessary to establish pre-sale knowledge of an alleged defect. *Dawson v. Gen. Motors LLC*, 2019 WL 3283046, at *6 (D.N.J. July 22, 2019) (holding that 100 instances of alleged failures over several years could not establish pre-sale knowledge); *Deras v. Volkswagen Grp. of Am., Inc.*, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018) (holding that 56 complaints to NHTSA "does not on its face indicate an unusually high number of complaints" and therefore failed to demonstrate pre-sale knowledge of the alleged defect); *Cho v. Hyundai Mot. Co., Ltd.*, 636 F. Supp. 3d 1149, 1168 (C.D. Cal. 2022) (even "400 complaints is quantitatively insufficient without some indicia of how those complaints represent an 'unusually high' amount"); *Sweeny v. Toyota Mot. Sales, U.S.A., Inc.*, 2023 WL 2628697, at *7 (C.D Cal. Feb. 9, 2023) (80 consumer complaints did not constitute such an "unusually high" number that the court should infer pre-sale knowledge).

Second, pre-sale knowledge is not established by Plaintiffs' vague, conclusory, and speculative allegations about unidentified "customer complaints,

27

information sent from dealers, and [VWGoA's] own internal records" (AC ¶ 7) or purported "tests" that VWGoA purportedly "would have run on its vehicles" (*id.* ¶ 339). However, there are no pleaded facts identifying these in any fashion, including the time, content, substance, source, or results of any so-called customer complaints, dealer information, internal records, or alleged testing. *Brown v. Hyundai Mot. Am.*, 2019 WL 4126710, at *7 (D.N.J. Aug. 30, 2019) (rejecting pre-sale knowledge based on conclusory allegations of unspecified "dealership repair records," "warranty and post-warranty claims," and "pre-sale durability testing"); *Schechter v. Hyundai Mot. Am.*, 2019 WL 3416902, at *8 (D.N.J. July 29, 2019) (same); *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1220 (S.D. Fla. 2021) ("the [conclusory] assertions regarding testing, reports, data, and analyses do not elaborate whatsoever as to what that information actually showed, which means such allegations do not make it more plausible that Defendants knew the [alleged] defect existed in hundreds of thousands of vehicles"); *Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *8 (N.D. Cal. Feb. 15, 2019) (rejecting pre-sale knowledge based upon conclusory allegations of "pre-sale design and testing").

## B. Failure to Establish Reliance and/or Causation

Under both their statutory and common law fraud claims, Plaintiffs were

28

required to establish reliance upon, or causation regarding, the alleged omission.[8].

This required Plaintiffs to plead the specific statements or information from

VWGoA, viewed by them prior to purchase, which allegedly should have contained

the undisclosed information. *Weske v. Samsung Elecs., Am., Inc.*, 42 F. Supp. 3d

599, 607-08 (D.N.J. 2014) (dismissing claim where plaintiff failed to plead they

"actually received" specific communications from defendant which omitted

information); *Glass*, 2011 WL 6887721, at *12 (same); *Schiesser*, 2016 WL

6395457, at *5 (conclusory allegations that "advertisements and representations

made by Ford" failed to disclose defect insufficient to state omission claim under

---

[8] The statutory CT, CO, FL, MA, MN, NJ, and OH consumer fraud claims all require a plaintiff to establish causation. *Goins v. JBC & Assocs., P.C.*, 2004 WL 2063562, at *5 (D. Conn. Sept. 3, 2004) (CT UTPA requires causation—*i.e.*, an ascertainable loss as a result of the defendant's actions); *Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 96 (Colo. 2011) (*en banc*) ("[T]he CCPA requires a plaintiff to establish a causal nexus between the allegedly deceptive practice and the consumer harm"); *VVIG Inc. v. Alvarez*, 2019 WL 5063441, at *11 (S.D. Fla. Oct. 9, 2019) (FDUPTA requires causation); *Frappier v. Countrywide Home Loans, Inc.*, 2013 WL 1308602, at * 19 (D. Mass. Mar. 31, 2013) ("In the absence of a causal relationship between the alleged unfair acts and the claimed loss, there can be no recovery [under MA Chapter 93A]"); *Certified Question U.S. Dist. Court Order v. Philip Morris*, 621 N.W.2d 2, 13 (Minn. 2001) ("causation remains an element" of the MPCFA); *Liebler v. LG Elecs. U.S.A., Inc.*, 2015 WL 3561590, at *4 (D.N.J. June 4, 2015) (NJCFA requires causation); *Felix v. Ganley Chevrolet, Inc.*, 49 N.E.3d 1224, 1231 (Ohio 2015) ("Plaintiffs bringing OCSPA class-action suits must allege and prove that actual damages were proximately caused by the defendant's conduct").
Under the AZ and ME statutes, courts have held that both reliance and causation are required elements. *Ventures Edge Legal PLLC v. GoDaddy.com LLC*, 2016 WL 3570465, at *4 (D. Ariz. July 1, 2016) (ACFA); *Sanford v. Nat'l Ass'n for the Self-Employed, Inc.*, 264 F.R.D. 11, 16 (D. Me. 2012) (ME UTPA).

29

Rule 9(b); "If a consumer has neither seen nor heard any…statement" from Ford then she "cannot prove proximate cause").

Here, all Plaintiffs repeat the identical conclusory allegation that they purchased or leased their vehicle "after considering Defendant's representations about the Class Vehicle, including the reported safe technology in the all-electric SUV," as well as VWGoA's "reputation for manufacturing quality vehicles" (AC ¶¶ 65, 75, 86, 97, 112, 124, 134, 145, 155). However, this fails to establish reliance and/or causation because Plaintiffs plead no facts identifying what specific "representations" or materials, if any, they claim to have reviewed, what they stated, who made them, or the date and time that Plaintiffs purportedly reviewed them. *Weske*, 42 F. Supp. 3d at 607-08 ("To prevail on a common law fraud claim…a plaintiff must allege that he or she 'actually received and considered the misstatement *or omission*, however indirectly uttered, before he or she completed the transaction") (emphasis added); *Davidson v. Apple, Inc.*, 2017 WL 976048, at *8 (N.D. Cal. Mar. 14, 2017) (dismissing omission claims because plaintiffs failed to sufficiently allege what "information, advertisements, labeling, or packaging materials by the Defendant" to which they were exposed prior to purchase).

C. **Failure to Establish a Duty to Disclose for Fraudulent Omission under Common Law (Count I) and the CT UPTA, AZ CPA, and MN DTPA (Counts II, IX, XVIII, XXIV)**

These claims fail because Plaintiffs have not pled facts establishing that

30

VWGoA had a duty to disclose the information claimed to have been concealed:

Common Law Fraud Under CT, FL, MN, OH, and CT Law and the MN DTPA

Claim (Counts I, IX, XXIII, XXIV). Under these state laws, in order to establish a

duty to disclose for an omission-based claim, a plaintiff must establish either (i) a

fiduciary relationship, or (ii) a partial misleading disclosure. *Withrow v. FCA US

LLC*, 2021 WL 2529847, at *18 (E.D. Mich. June 21, 2021) (CT common law);

*Cohen v. Subaru of Am., Inc.*, 2022 WL 714795, at *24 (D.N.J. Mar. 10, 2022) (CT

UTPA); *Functional Pathways of Tenn., LLC v. Cross*, 2015 WL 13936024, at *2

(S.D. Fla. Nov. 20, 2015); *MH v. Caritas Family Svcs.*, 488 N.W.2d 282, 288 (Minn.

1992) (common law); *Graphic Comm'ns Local 1B Health & Welfare Fund A v. CVS

Caremark Corp.*, 850 N.W.2d 682, 695-96 (Minn. 2014) (MN CFA); *Szep v. Gen.

Motors LLC*, 491 F. Supp. 3d 280, 296 (N.D. Ohio 2020) (OH common law).

Plaintiffs Beecher (CT), Kahhan and De La Cruz (FL), Gates (MN), and Serio

(OH) have not pled any fiduciary or special relationship with VWGoA, and no such

relationship existed. Further, Plaintiffs fail to plead any "partial disclosure" of any

fact by VWGoA concerning the vehicle's steering wheel ACC controls, let alone

one that was misleading and would have required a further disclosure. *Tijerina*, 2023

WL 6890996, at *23 (no duty to disclose because "Plaintiffs have not identified a

partial misleading disclosure concerning the second-row seats specifically").

31

Common Law Fraud Under AZ and CO Law and the AZ CPA Claim (Counts I, XVIII). Under these state laws, a duty to disclose arises only in the case of (i) a fiduciary relationship; (ii) a partial misleading misrepresentation, or (iii) the defendant's knowledge of facts "basic to the transaction." *In re Arizona Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026, 1043 (D. Ariz. 2018) (common law and ACPA); *Alzado-Lotz v. Mut. Sec., Inc.*, 2023 WL 11903720, at *8 (D. Colo. Aug. 11, 2023). Regarding (i) and (ii), Plaintiffs Smith and Friel allege no fiduciary relationship with or partial misrepresentation by VWGoA. Regarding (iii), they fail to establish that VWGoA had "knowledge" of the alleged (but unidentified) "defect" prior to their purchases (Point V.A., *supra*).

ME Common Law Fraud (Count I). Under ME law, a duty to disclose requires the plaintiff to establish either (i) a fiduciary relationship, or (ii) an active concealment of the truth. *Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me. 1995). Here, ME Plaintiff Popescu pleads no fiduciary relationship with VWGoA, and his bare and conclusory "active concealment" allegation (AC ¶ 177) lacks pleaded facts establishing any act of "active concealment" by VWGoA above and beyond the mere "non-disclosure" allegations. *Alrig USA Acquis. LLC v. MBD Realty LLC*, 331 A.3d 372, 379 (Me. 2025) (dismissing fraudulent omission claims for failure to plead facts establishing active concealment; mere non-disclosure is insufficient).

MA Common Law Fraud (Count I). To establish a duty to disclose under MA law, a plaintiff must demonstrate (i) the existence of a fiduciary or special relationship, (ii) a misleading partial disclosure by the defendant, or (iii) the defendant's unique knowledge of "basic" facts "essential" to the transaction. *Block v. Jaguar Land Rover N. Am., LLC*, 2019 WL 7184722, at *9 (D.N.J. Dec. 23, 2019). Here, MA Plaintiff Hakkaoui's claims fail for the reasons stated above. Furthermore, the "essential facts" doctrine does not apply under MA law because Hakkaoui purchased his vehicle from a dealer and not from VWGoA. *Block*, 2019 WL 7184722, at *9 (dismissing MA law fraud by omission claims and declining to apply the "essential" facts exception because plaintiff "failed to allege that she engaged in a transaction with [the defendant distributor]"); *McCabe v. Ford Motor Co.*, 720 F. Supp. 3d 14, 30–31 (D. Mass. 2024) (automaker had no duty to disclose under MA law where vehicle was purchased from dealership and not Ford).

### D.  **Smith's AZ CFA Claim Is Time-Barred (Count XVIII)**

Private actions under the AZ CFA are subject to a one-year statute of limitations, running from when a party discovered, or with reasonable diligence, could have discovered the alleged deception. *Ahern v. Apple*, 411 F. Supp. 3d 541, 570 (N.D. Cal. 2019); Ariz. Rev. Stat. § 12-541(5). Here, AZ Plaintiff Smith, whose incident allegedly occurred on May 13, 2023 (AC ¶ 89), admits that on May 14, 2023, she "wrote to [VWGoA] customer care [to] report the crash," in which she

claims to have "experienced the Defect," to "have them investigate the issue with the Class Vehicle" (¶¶ 89-91). Since this action was filed on June 10, 2025, Count XVIII is time-barred. *Ahern*, 411 F. Supp. 3d at 570 (dismissing AZ CFA claim as time-barred where Plaintiff went "so far as to mention [the alleged problem] in a conversation with an Apple representative").

### E. The NJCFA Claim Should Be Dismissed (Count VI)

Count VI purports to assert a "nationwide" claim for violation of the NJCFA, notwithstanding that no Plaintiff resides in or purchased/leased a vehicle in NJ. This Count should be dismissed because, as the Third Circuit repeatedly held, out-of-state Plaintiffs lack standing to assert claims under the NJCFA, which cannot apply extraterritorially. *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010) (Arizona plaintiff could not sue under the NJCFA because "[t]he transaction in question bears no relationship to New Jersey other than the location of Samsung's headquarters…"); *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 208–09 (3d Cir. 2013) (NJCFA inapplicable to plaintiff injured in South Carolina, where he "received and relied on [the] alleged fraud," as "[n]othing else about the relationship between the parties, other than the fortuitous location of BIC's headquarters, took place in the state of New Jersey").

**F.  Gates and Friel's Claims for Monetary Damages Under the MN DTPA and CO CPA Should Be Dismissed (Counts XIV, XXIV)**

Plaintiffs Gates and Friel seek monetary damages in connection with their MN DTPA and CO CPA claims (AC ¶¶ 358, 493). These claims should be dismissed because (i) monetary damages are not available under the MN DTPA, which provides for injunctive relief only, *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1113, and (ii) the CO CPA bars the recovery of monetary damages in a class action. *Miller v. Ford Motor Co.*, 2024 WL 1344597, at *37 (E.D. Cal. Mar. 29, 2024) (collecting authority).

**G.  Hakkaoui's MA Chap. 93A Claim Fails for Additional Reasons (Count XII)**

A "consumer plaintiff's claim of violation of [Chap. 93A] based solely on an underlying but meritless claim for fraud is itself without merit," and is "absorbed in and vanishes with the [meritless] misrepresentation claim." *McCabe v. Ford Mot. Co.*, 774 F. Supp. 3d 349, 399 (D. Mass. 2025) (*quoting Lily Transp. Corp. v. Royal Instit. Servs., Inc.*, 64 Mass. App. Ct. 179, 204 (2005)). Since Hakkaoui's Chap. 93A claim is based solely upon his deficient common law fraud claim, it should be dismissed for the same reason.

35

## VI. ALL EQUITABLE RELIEF CLAIMS, INCLUDING UNJUST ENRICHMENT AND INJUNCTIVE RELIEF, SHOULD BE DISMISSED (COUNTS V, VII, XII, XIII, XXIII, XXIV)

### A. All Equitable Relief Claims Fail

Plaintiffs have not even alleged, let alone established, that they lack any adequate alternative remedy at law—a basic and essential requirement of any equitable relief claim. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840 (9th Cir. 2020) (affirming dismissal of all equitable relief claims for failure to plead the absence of any adequate alternative legal remedy); *Rains v. Jaguar Land Rover N. Am., LLC*, 2023 WL 6234411, at *8 (D.N.J. Sept. 26, 2023) (applying *Sonner* and dismissing claims for equitable and injunctive relief in automotive class action where pleading "lack[ed] any allegations as to why legal relief is inadequate"); *Hickman v. Subaru of Am., Inc.*, 2022 WL 11021043, at *11 (D.N.J. Oct. 19, 2022) (dismissing equitable relief claims because "the pleading does not demonstrate the inadequacy of a legal remedy"); *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005); *Cohen v. Subaru of Am., Inc.*, 2022 WL 721307, at *34 (D.N.J. Mar. 10, 2022) (dismissing unjust enrichment claims under the laws of 24 states, including MA, CT, FL, and MN).

Furthermore, Plaintiffs have asserted numerous legal claims for damages.

### B. Plaintiffs Lack Article III Standing to Seek Injunctive Relief

To have Article III standing, each Plaintiff must establish that absent an injunction, he/she is likely to suffer a future injury that is "concrete and

36

particularized" and "imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992);

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208-2210 (2021). Allegations of past

harm or "possible future injury" cannot confer Article III standing. *Clapper v.*

*Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Here, Plaintiffs, who have asserted various claims including fraud regarding

the putative class vehicles, essentially allege a past injury and do not allege any

intention to purchase another putative class vehicle in the future. They have, thus,

failed to establish any concrete and particularized imminent future injury that would

confer Article III standing for injunctive relief. *Devane v. Church & Dwight Co.*,

2020 WL 998946, at *4 (D.N.J. Feb. 28, 2020) (no Article III standing for injunctive

relief because plaintiffs were already aware of alleged misrepresentations, so there

was "no risk that Plaintiffs will be misled in the future"); *McNair v. Synapse Grp.*

*Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (no Article III standing absent a "reasonable

likelihood that [plaintiffs] will be injured by [deceptive sales] techniques in the

future"); *In re Subaru Battery Drain*, 2021 WL 1207791, at *28 (same).[9]

## C. The Unjust Enrichment Claims Fail for Additional Reasons

Under the laws all eight states at issue, an unjust enrichment claim is barred

where the rights of the parties are governed by a contract—here, the written NVLWs

---

[9] This includes, in the CT, CO, AZ, and MN statutory claims, the request for an injunction against "unfair and/or deceptive acts or practices" (AC ¶¶ 298, 358, 409, 478) and to compel repurchase or repair of all vehicles (Prayer for Relief at E).

37

applicable to Plaintiffs' vehicles.[10]

In addition, an unjust enrichment claim under CO, CT, FL, MA, ME, and OH law requires "that the plaintiff conferred a benefit directly upon the defendant rather than merely through the chain of commerce."[11] Since Plaintiffs acquired their vehicles from third-party retail dealers (AC ¶¶ 64, 74, 84, 96, 111, 123, 133, 144, 154), and not from VWGoA, which conferred no "direct benefit."

Finally, since Plaintiffs' unjust enrichment claims are premised upon the same

---

[10] *See David v. Volkswagen Grp. of Am., Inc.*, 2018 WL 1960447, at *7 (D.N.J. Apr. 26, 2018) (dismissing unjust enrichment claim in similar automotive class action because of the existence of an applicable express warranty); *Omori v. Brandeis Univ.*, 635 F. Supp. 3d 47, 58 (D. Mass. 2022) (dismissing unjust enrichment claim under MA law based on the "existence of a contract"); *Nat'l Waste Assocs., LLC v. TD Bank, N.A.*, 2016 WL 4200095, at *1 (Conn. Super. Ct. June 21, 2016) (under CT law, "an action for unjust enrichment cannot lie in the face of an express contract...governing the same subject matter") *Gant v. Ford Motor Co.*, 517 F. Supp. 3d 707, 723 (E.D. Mich. 2021) (same under AZ, FL, OH law); *Nadeau v. Pitman*, 731 A.2d 863 (Me. 1999); *Graff v. Brighthouse Life Ins. Co.*, 109 F.4th 1118 (8th Cir. 2024) (same, MN law); *Pulte Home Corp., Inc. v. Countryside Cmty. Assoc., Inc.*, 382 P.3d 821, 833 (Colo. 2016).

[11] *Granito v. Int'l Bus. Machines*, 2003 WL 1963161, at *2 (Conn. Super. Ct. Apr. 16, 2003) (allegations of purchase through "third party retailers" failed to state an unjust enrichment claim because, "[a]bsent the conferring of a benefit by the plaintiff directly, no action for unjust enrichment by him is valid"); *Walgreen Co. v. Haseotes*, 778 F. Supp. 3d 264, 295 (D. Mass. 2025) (MA unjust enrichment "requires that the plaintiff *directly* bestowed a benefit on the defendant" or the "claim must be dismissed…"); *Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1244 (D. Colo. 2011) (same); *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) (same); *Rivers v. Amato*, 2001 WL 1736498, at *4 (Me. Sup. Ct. June 22, 2001) ("indirect benefit" insufficient for unjust enrichment); *Johnson v. Microsoft Corp.*, 2005-Ohio-4985, ¶ 22 (2005) (indirect purchaser cannot assert unjust enrichment claim).

deficient allegations as their fraud claims, they fail for the same reasons. *Flynn-Murphy v. Jaguar Land Rover N. Am, LLC*, 2021 WL 5448716, at *9 (D.N.J. Nov. 19, 2021) (dismissing unjust enrichment claim, holding that plaintiff "failed to plausibly plead that Defendant knew of and failed to disclose the turbocharger defect at the time of sale"); *Girard v. Toyota Mot. Sales, U.S.A., Inc.*, 316 Fed. App'x. 561, 563 (9th Cir. 2008); *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 613 (D.N.J. 2016) (dismissing equitable and unjust enrichment claims premised on "insufficiently pleaded" allegations of "deceptive acts").

## VII. PLAINTIFFS' "NATIONWIDE" CLASS CLAIMS SHOULD BE DISMISSED OR STRICKEN (COUNTS I-V)

In Counts I-V of the AC, Plaintiffs, who reside in and purchased/leased their vehicles in only eight states, purport to assert representative claims on behalf of a putative "Nationwide Class" consisting of all "United States" purchasers and lessees of subject vehicles (AC ¶¶ 62, 72-117). However, Plaintiffs lack Article III standing to assert claims on behalf of unnamed putative class members who reside or purchased their vehicles in states in which the Plaintiffs themselves did not purchase/lease their vehicles and, thus, suffered no injury. *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 223-24 (D.N.J. 2020) (dismissing "nationwide" claims to the extent they encompassed states other than those in which the named plaintiffs resided or purchased their vehicles); *McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132, at *6 (D.N.J. June 6, 2014) ("Plaintiff here lacks standing to

assert claims under the laws of the states in which he does not reside, or in which he suffered no injury"); *Rieger v. Volkswagen Grp. of Am., Inc.*, 2023 WL 3271116, at *5 (D.N.J. May 4, 2023) (same); *Tijerina v. Volkswagen Grp. of Am., Inc.*, 2023 WL 6890996, at *8 (D.N.J. Oct. 19, 2023) (same). Accordingly, the purported "nationwide class" claims should be dismissed or stricken for lack of standing.

## CONCLUSION

For the foregoing reasons, VWGoA respectfully requests that the AC be dismissed in its entirety, with prejudice, together with such other and further relief as the Court deems just and proper.

February 6, 2026                          SHOOK, HARDY & BACON L.L.P.

                                          By: */s/ Homer B. Ramsey*
                                          Homer B. Ramsey
                                          *hramsey@shb.com*
                                          101 Hudson Street, 21st Floor
                                          Jersey City, NJ 07302
                                          Tel: (201) 660-9995

                                          Michael B. Gallub (*pro hac vice*)
                                          Daniel W. Robertson (*pro hac vice*)
                                          *mgallub@shb.com*
                                          *drobertson@shb.com*
                                          1 Rockefeller Plaza, Suite 2801
                                          New York, NY 10020
                                          Tel: (212) 989-8844

                                          *Attorneys for Defendant Volkswagen Group of America, Inc.*

40