# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANICE BEECHER, OMAR HAKKAOUI, ANDREA SMITH, SHANNON FRIEL, CATALIN POPESCU, IVAN DE LA CRUZ, NICOLE KAHHAN, PATRICIA SERIO, and MEGAN GATES, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>　　　　　　　　Defendant. | Case No.:<br>2:25-cv-09555-MEF-LDW<br><br>**Document electronically filed**<br><br>Motion Date: April 20, 2026 |

**DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................1

I.      Failure To Adequately Plead A "Defect" and Causation ...............................1

II.     Plaintiffs' Express Warranty Claims Fail .......................................................3

III.    Plaintiff's Implied Warranty Claims Fail ........................................................6

IV.     The Common Law and Statutory Fraud Claims Fail .....................................8

V.      All Claims for Equitable Relief Fail................................................................13

VI.     The Nationwide Class Claims Should Be Dismissed...................................15

CONCLUSION ..............................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bolooki v. Ford Motor Co.*,
2023 WL 2627015 (D.N.J. Mar. 24, 2023) .......................................................5, 6

*Chiulli v. Am. Honda Mot. Co. Inc.*,
690 F. Supp. 3d 1038 (N.D. Cal. 2023).................................................................4

*Cilluffo v. Subaru of Am., Inc.*,
2024 WL 1270814 (D.N.J. Mar. 26, 2024) ...........................................................5

*Coba v. Ford Mot. Co.*,
932 F.3d 114 (3d Cir. 2019) ..................................................................................4

*Dack v. Volkswagen Grp. of Am., Inc.*,
565 F. Supp. 3d 1135 (W.D. Mo. 2021)................................................................4

*DaSilva v. Toyota Motor Corp.*,
474 F. Supp. 3d 448 (D. Mass. 2020).....................................................................8

*Garcia v. Chrysler*,
127 F. Supp. 3d 212 (S.D.N.Y. 2015) (Opp. ).....................................................4

*Geriatrics, Inc. v. McGee*,
332 Conn. 1 (2019) ..............................................................................................14

*Granito v. Int'l Bus. Machines*,
2003 WL 1963161 (Conn. Super. Ct. Apr. 16, 2003) .........................................15

*Hickman v. Subaru of Am., Inc.*,
2022 WL 11021043 (D.N.J. Oct. 19, 2022) ........................................................13

*Makris v. BMW of N. Am., LLC*,
2024 WL 1403663 (Conn. Super. Ct. Mar. 27, 2024)...........................................6

*McMahon v. Volkswagen*,
2023 WL 4045156 (D.N.J. June 16, 2023)............................................................9

*McQueen v. BMW of N. Am., LLC*,
2013 WL 4607353 (D.N.J. Aug. 29, 2013) ........................................................1, 2

ii

*In re Mercedes-Benz Emissions Litig.*,
  341 F.R.D. 205 (D.N.J. 2022)................................................................................14

*Mosqueda v. Honda*,
  443 F. Supp. 3d 1115 (C.D. Cal. 2020) .............................................................2

*Murphy v. Toyota Motor Sales, USA, Inc.*,
  2021 WL 2801452 (C.D. Cal. July 1, 2021).......................................................7

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014)...................................................................6

*Napoli-Bosse v. Gen. Motors*,
  453 F. Supp. 3d 536 (D. Conn. 2020)..................................................................6

*Nelson v. Nissan*,
  894 F. Supp. 2d 558 (D.N.J. 2012)......................................................................2

*Powell v. Subaru*,
  502 F. Supp. 3d 856 (D.N.J. 2020) ..............................................................2, 10

*Rieger v. Volkswagen Group of Am., Inc.*,
  2023 WL 3271116 (D.N.J. May 4, 2023)...........................................9, 10, 13, 15

*Shafik v. Aston Martin*,
  770 F. Supp. 3d 432 (D. Conn. 2025)..................................................................6

*Snowdy v. Mercedes-Benz USA, LLC*,
  2024 WL 1366446 (D.N.J. Apr. 1, 2024).............................................................9

*Snowman v. FCA*,
  2025 WL 2097363 (D. Del. July 24, 2025) .........................................................7

*Ulrich v. GM*,
  2025 WL 629460 (E.D. Mich. Feb. 25, 2025)......................................................6

*Volin v. Gen. Motors, LLC*,
  2018 WL 3674104 (D.N.J. Aug. 2, 2018) ..........................................................14

*In re Volkswagen Timing Chain*,
  2017 WL 1902160 (D.N.J. May 8, 2017)........................................................7, 14

iii

*Weske v. Samsung Elecs., Am., Inc.*,
  42 F. Supp. 3d 599 (D.N.J. 2014)..........................................................................10

*Zuehlsdorf v. FCA*,
  2019 WL 2098352 (C.D. Cal. Apr. 30, 2019)....................................................2

**Statutes and Other Authorities**

Conn. Gen. Stat. § 42a-2-313................................................................................6

U.S. Const. Art. III................................................................................................15

## ARGUMENT[1]

I. **FAILURE TO ADEQUATELY PLEAD A "DEFECT" AND CAUSATION**

**Alleged Defect.** Plaintiffs neither distinguish the cases cited by VWGoA nor contest the well-settled law that "merely alleging certain symptoms, effects, or experiences" of an alleged "defect" – as they have done here – fails to plead the "defect" that underlies their claims (MTD at 14). Plaintiffs' allegation that the "capacitive steering wheel haptic/touch controls for ACC are overly touch sensitive" (Opp. at 7) does not suffice, because it merely alleges a symptom, effect, or characteristic which fails to articulate any actual design defect in the ACC controls. Plaintiffs did not, as required, identify what components of the ACC controls are claimed to be defectively designed, how and why they were defectively designed, and the manner in which they should have been designed. MTD at 14; *see*, *e.g.*, *McQueen v. BMW of N. Am., LLC*, 2013 WL 4607353, at *7 (D.N.J. Aug. 29, 2013).[2]

Plaintiffs' argument that it is sufficient to merely refer to certain anonymous third-party NHTSA complaints (Opp. at 8) was flatly rejected in *McQueen*, which held that citation to NHTSA complaints asserting "anecdotal results of similar

---

[1] In response to VWGoA's Motion ("MTD"), Plaintiffs withdraw their MMWA, NJCFA, and AZ and CT breach of implied warranty claims, conceding their dismissal (Opp. at 5 n.7). Those claims should therefore be dismissed.

[2] As to the IQ.Drive features, Plaintiffs merely argue that "the defect is tied to the vehicle's ACC control interface and its interaction with the vehicle's driver-assistance suite (IQ. Drive)" (Opp. at 7). This likewise fails to identify any defect.

effects" failed to sufficiently plead a defect.  2013 WL 4607353, at *7.

Finally, while Plaintiffs argue they are not required to plead "detailed technical engineering specifications" (Opp. at 7), they were required to at least articulate the alleged design defects that underlie their claims, and not merely "symptoms," "effects," or "experiences" which courts have repeatedly found insufficient. Plaintiffs find no support in *Nelson v. Nissan*, 894 F. Supp. 2d 558, 561 (D.N.J. 2012), which did not address whether the alleged defect was sufficiently identified, *Powell v. Subaru*, 502 F. Supp. 3d 856, 882 (D.N.J. 2020), which, unlike here, identified a specific "manufacturing defect [that] allows for too much tension in the [windshield] glass," or *Zuehlsdorf v. FCA*, 2019 WL 2098352, at *6 (C.D. Cal. Apr. 30, 2019), where, unlike here, plaintiff specifically identified the defective transmission component by part number and how it was defective. To the extent *Mosqueda v. Honda*, 443 F. Supp. 3d 1115, 1126 (C.D. Cal. 2020) did not apply this standard, it contravenes the weight of authority and should not be followed here.

**Failure to Establish Causation.** Plaintiffs do not dispute the following which the MTD demonstrated:

(1) Activating and programing the ACC requires the driver to intentionally press a series of specific control buttons on both sides of the steering wheel during a specific trip in order to (a) first turn the ACC on, and (b) then set a chosen speed;

(2) The ACC automatically turns off every time the vehicle's engine is turned off. When the engine is started again, the driver must affirmatively turn the ACC back on and program the chosen speed in the same manner;

(3) No Plaintiff pleads that the ACC system in his/her vehicle *was ever used at any time, much less on the date of the alleged incident*;

(4) Seven of the nine Plaintiffs (Hakkaoui, Friel, Popescu, De La Cruz, Kahhan, Serio, and Gates) *do not plead that they touched or brushed against the steering wheel ACC control buttons, either intentionally or unintentionally, prior to or at the time of their alleged incidents* (MTD at 5-7), and

(5) Two Plaintiffs (Beecher and Smith) who conclusorily allege they "lightly brushed" the steering wheel controls with their hand, plead no further facts and, *likewise, do not allege that they ever turned on and used the vehicle's ACC functions at any time, including on the dates of their alleged incidents* (MTD at 8).

Plaintiffs admit that the standard is whether they have "alleged enough *facts*" to make causation "plausible" (Opp. at 9). They have not. Plaintiffs' claims are based upon speculation and conjecture because there are no pleaded facts plausibly establishing that their vehicles' ACC controls or IQ.Drive features ever malfunctioned or had anything to do with their alleged incidents (MTD at 14-15).

## II.    PLAINTIFFS' EXPRESS WARRANTY CLAIMS FAIL

**The NVLWs Do Not Cover Alleged Design Defects.** Plaintiffs do not dispute that: (i) design defects are not covered by the "materials or workmanship" NVLWs, and (ii) that they have specifically alleged that "the capacitive steering wheel was a design defect" and the choice to use that design was a "mistake" (Opp. at 10-11; AC ¶ 53). This warrants dismissal of their express warranty claims.

Apparently abandoning the ACC controls as a basis for these claims, Plaintiffs, without any authority, argue only that their vague allegation about the "implementation and configuration" of the vehicles' "software" constitutes a

3

"workmanship" defect (Opp. at 10-12). But Plaintiffs do not allege that the "implementation" and "configuration" of their vehicles' software differs from any of the other putative class vehicles, thus making their claim a design defect. MTD at 17 n.4;[3] *Coba v. Ford Mot. Co.*, 932 F.3d 114, 123 (3d Cir. 2019); *Chiulli v. Am. Honda Mot. Co. Inc.*, 690 F. Supp. 3d 1038, 1051 (N.D. Cal. 2023) (alleged "programming or calibration defect," not claimed to vary from intended design, was a design defect not covered by "materials or workmanship" warranty); *Dack v. Volkswagen Grp. of Am., Inc.*, 565 F. Supp. 3d 1135, 1147 (W.D. Mo. 2021) (same).

*Garcia v. Chrysler*, 127 F. Supp. 3d 212, 226 (S.D.N.Y. 2015) (Opp. at 11) does not support Plaintiffs because it *dismissed* the express warranty claims for this very reason. It rejected a similar attempt to mischaracterize, as a "manufacturing" defect, what was essentially a design defect claimed to exist in all putative class vehicles and not covered under defendant's "materials or workmanship" warranty.

**No Presentment During the Express Warranty Period.** Plaintiffs do not controvert VWGoA's showing that "with the exception of Hakkaoui, Plaintiffs do not claim to have ever presented their vehicles to a Volkswagen dealer with any complaint regarding the steering wheel ACC controls or IQ.Drive features, much less that the dealer refused to repair a diagnosed problem with them" (MTD at 18-19). Plaintiffs also do not dispute the governing law discussed in the MTD (*Id.*).

---

[3] For the same reason, Plaintiff's citation to *Zeiders* is inapposite (Opp. at 10 n.3).

4

Beecher, Smith, and De La Cruz argue that after their accidents, they took their vehicles to VW dealers for repair of body damage (Opp. at 12-13). But they do not claim to have ever presented their vehicles to a dealer for diagnosis and repair of any issue with the ACC controls or IQ.Drive features during the NVLW period, as was required (MTD at 18-19).[4]

Likewise, MA Plaintiff Hakkaoui does not dispute the controlling MA law that there is no breach of express warranty where, as in his case, the dealership examined the vehicle and found no problem (MTD at 19).

Finally, neither the AC, nor the cases Plaintiffs cite, support their erroneous and speculative argument that the presentment requirement should be excused for so-called "futility" (Opp. at 13-14). This case is a far cry from *Cilluffo*, where, during the warranty period, one plaintiff physically presented his vehicle to a dealer on five occasions for repair of the subject issue, and the other complained about it to a dealer which declined to examine the vehicle. 2024 WL 1270814, at *12. Plaintiffs also misstate the holding in *Bolooki*, which, rejecting the same "futility" argument, dismissed the express warranty claims of plaintiffs who did not present their vehicles to an authorized dealer for repair of the subject issue during the warranty period.

---

[4] Beecher and Smith's argument that they informed VW Customer Care of their incidents and sent pre-suit notice letters (Opp. at 12-13) fails for the same reason.

2023 WL 2627015, at *4. Finally, *In re MyFord Touch* also rejected the same type of "futility" argument attempted here. 46 F. Supp. 3d at 971.

**Beecher's CT Express Warranty Claim Fails.** While Plaintiffs argue that some courts outside CT differ (Opp. at 14-15), they cannot dispute that CT courts, applying CT law, have consistently held that "repair or replace" warranties (like the NVLWs here) are not "express warranties" within the meaning of § 42a-2-313 because they are not statements about the performance of the vehicle but only contracts to repair. MTD at 19-20; *Shafik v. Aston Martin*, 770 F. Supp. 3d 432, 439-40 (D. Conn. 2025); *Napoli-Bosse v. Gen. Motors*, 453 F. Supp. 3d 536, 545-46 (D. Conn. 2020); *see also Makris v. BMW of N. Am., LLC*, 2024 WL 1403663, at *3 (Conn. Super. Ct. Mar. 27, 2024). And respectfully, *Ulrich v. GM,* 2025 WL 629460, at *6 (E.D. Mich. Feb. 25, 2025) does not apply because it decided not to follow the CT cases, but instead, followed the Sixth Circuit's interpretation of MI UCC law.

## III.    PLAINTIFF'S IMPLIED WARRANTY CLAIMS FAIL

**Lack of Privity Under AZ, CT, FL, and OH Law.** As an initial matter, Plaintiffs concede that the AZ and CT implied warranty claims of Smith and Beecher should be dismissed for lack of privity (Opp. at 17 n.21). Further, OH Plaintiff Serio does not dispute her lack of privity, and does not address her failure to plead facts establishing OH's "intent to benefit" test for third-party beneficiary status which, *inter alia*, required pleaded facts establishing that the manufacturer knew it was

6

manufacturing the good specifically for the particular consumer and knew about that consumer's requirements (MTD at 23). Serio pleads no such facts.

Finally, FL Plaintiff De La Cruz, who admittedly purchased his vehicle from a dealer and not VWGoA, cites only *In re Volkswagen Timing Chain*, 2017 WL 1902160, at *16 (D.N.J. May 8, 2017), while ignoring the more recent cases recognizing that "the weight of the authority shows Florida does not recognize a third-party beneficiary exception in these circumstances"—*i.e.*, where a plaintiff purchases a vehicle from a dealership. *Murphy v. Toyota Motor Sales, USA, Inc.*, 2021 WL 2801452, at *8 (C.D. Cal. July 1, 2021) (analyzing FL state law decisions).

**Failure to Establish Unmerchantability.** Plaintiffs ignore VWGoA's showing that they failed to establish that their vehicles were unmerchantable because they failed to adequately identify any defect and plead facts plausibly establishing that their ACC controls or IQ.Drive features ever malfunctioned or caused their alleged incidents. There is also no dispute that all Plaintiffs who still own their vehicles continue to drive them without incident (MTD at 20). Plaintiffs' conclusory arguments of a "danger" (Opp. at 16) are not supported by pleaded facts, and materially differ from *Snowman v. FCA*, 2025 WL 2097363, at *8 (D. Del. July 24, 2025), where plaintiff experienced the alleged engine problems on an ongoing basis.

**Hakkaoui's MA Claim Fails.** Plaintiff does not dispute that in the absence of a claim for personal injury or property damage, a breach of implied warranty claim

requires "a legally required standard that the vehicles were at least implicitly represented as meeting but allegedly did not" (MTD at 23). While Hakkaoui argues that his accident caused property damage (Opp. at 18), he is not asserting any property damage claim here, and *DaSilva v. Toyota Motor Corp.*, 474 F. Supp. 3d 448, 456 (D. Mass. 2020), his only cited case, involved a claim for wrongful death.

## IV.    THE COMMON LAW AND STATUTORY FRAUD CLAIMS FAIL

**Failure to Establish Pre-Sale Knowledge.** Plaintiffs offer no legitimate opposition to their failure to establish that VWGoA had pre-sale knowledge of any alleged defect (MTD at 25-28). First, as to the cited 54 third-party NHTSA complaints, Plaintiffs do not dispute that *only five of them* address the issue of purported inadvertent ACC activation, *none* of them pre-date the transactions of Hakkaoui, Smith, Kahhan, or Serio, and *only two* pre-date the leases of Beecher and Popescu (Opp. at 25-26, identifying complaints 11604686, 11541568, 11604230, 11605013, and 11625016)). While these five complaints pre-date the transactions of Gates, Friel, and De La Cruz, they were scattered over the course of four years, and do not come close to constituting the "unusually high" number of pre-sale complaints necessary to establish knowledge of a defect (MTD at 25-27).

This is not, as Plaintiffs argue, an "out-of-circuit standard" (Opp. at 22). It is

8

routinely applied in this District and throughout the Third Circuit (*See* MTD at 27).[5]

Nor have Plaintiffs cited any authority supporting that pre-sale knowledge can be

established through vague and generalized complaints of unintended acceleration

that neither claim nor even refer to inadvertent activation of the ACC (Opp. at 21).

Second, Plaintiffs fail to rebut that the AC pleads no facts to support their

speculative conclusory allegations, repeatedly found by courts as insufficient, of pre-

sale knowledge through unidentified "internal records" or unidentified so-called

"tests" that VWGoA "would have run on its vehicles" (MTD at 28). Plaintiffs also

fail to distinguish the authorities cited by VWGoA, arguing instead that some of

them involved different state consumer fraud statutes without any explanation as to

how or why that would make any difference when pre-sale knowledge is a

requirement for all such statutory and common law fraud claims.

Finally, there is no merit to Plaintiffs argument that these two glaringly

insufficient bases establish pre-sale knowledge "in combination" (Opp. at 21).[6]

---

[5] *See also McMahon v. Volkswagen*, 2023 WL 4045156, at *13 (D.N.J. June 16, 2023) (four to seven relevant pre-sale complaints insufficient to establish pre-sale knowledge); *Snowdy v. Mercedes-Benz USA, LLC*, 2024 WL 1366446, at *20 (D.N.J. Apr. 1, 2024) ("[F]ive consumer complaints are not an 'unusually high number of complaints'" needed to infer pre-sale knowledge).

[6] The cases Plaintiffs cite (Opp. at 19-23) are vastly different from the case at bar. *See, e.g., Asghari* (did not consider the issue of pre-sale knowledge); *Rieger* (alleging 27 pre-sale NHTSA complaints, and 2 pre-sale Technical Service Bulletins ("TSBs") by defendant that specifically addressed the subject issue); *Francis* (GM issued "60 TSBs over a span of five years"); *Lyman* (27 NHTSA complaints, 9 TSBs by defendant, 2 "Special Service Messages" by defendant, and 1,800 online

9

**Failure to Establish Causation and/or Reliance.** Erroneously relying upon a case applying CA state law (inapplicable here), Plaintiffs argue that they need only plead they "would not have paid the asking price had the defect been disclosed" (Opp. at 24). This contravenes the *applicable* law that, to establish reliance or causation on a fraudulent omission, Plaintiffs were required to identify "specific statements or information" they encountered prior to purchase that omitted the information (MTD at 29-30, *citing Weske v. Samsung Elecs., Am., Inc.*, 42 F. Supp. 3d 599, 607-08 (D.N.J. 2014)). Plaintiffs cite *Robinson* and *Rieger* (Opp. at 24), but unlike the AC here, their pleadings had identified specific documents and communications by defendant that plaintiffs encountered prior to purchase.

**Failure to Establish a Duty to Disclose.** CT Law (Beecher): There is no duty to disclose absent a fiduciary relationship with Defendant, the lack of which is undisputed, or a partial misleading disclosure prior to purchase, which the AC fails to establish. MTD at 31 (citing *Withrow*, which Plaintiffs do not address). VWGoA's alleged generalized statement that the vehicles have "safe technology" (Opp. at 25)

---

comments, many of which pre-dated plaintiffs' purchases); *BK Trucking* (alleging "numerous" pre-sale TSBs and the defendant's real-time monitoring of electronic data from the subject engines); *Opheim* (numerous "service bulletins over the past decade" by defendant and a full "redesign" of the subject part); *Rothschild* (specific factual allegations of pre-sale testing, pre-sale TSBs by defendant, and a "Special Coverage Adjustment" by defendant for the alleged defect); *Avedisian* (knowledge acquired six years prior to plaintiff's purchase including third parties' marketing of "products designed to remedy the defect"); *Robinson* (multiple pre-sale TSBs by defendant addressing the same alleged issues); *Powell* (same).

10

does not constitute a misleading partial disclosure because it does not even mention, much less make any representation concerning, the steering wheel ACC controls or the IQ.Drive, which was required for a duty to disclose (MTD at 31, which Plaintiffs ignore). Finally, Plaintiff misstates CT law in arguing that it recognizes the "special facts doctrine," and *BAC Home Loans*, which relied upon NY law, does not apply.

FL and OH Law (De La Cruz, Kahhan). Plaintiffs do not dispute that the same above standard governs a duty to disclose for the FL and OH common law fraud claims, which therefore fail for the same reasons. Plaintiffs' cited cases (Opp. at 26) all address a duty to disclose for FL and OH *statutory* claims, which have a different standard from that of a common law fraud claim.

AZ, CO, and MN law (Smith, Friel, Gates). With respect to these state common law and statutory fraud claims, Plaintiffs' argument that there was a duty to disclose based upon "special knowledge of material facts" (Opp. at 26-27) fails because Plaintiffs have not established any pre-sale knowledge, as discussed above.

ME Law (Popescu). Plaintiff concedes that a duty to disclose for a ME common law fraud claim requires a fiduciary relationship or an "active concealment" prior to purchase (Opp. at 29). The absence of a fiduciary relationship is not in dispute, and Popescu, who alleges interactions with VWGoA's Customer Care *after* he leased the vehicle (Opp. at 29), pleads no facts showing any concealment, much less "active concealment," *prior* to his lease (MTD at 32).

11

MA Law (Hakkaoui). Finally, under MA law, Plaintiff asserts the same argument of "misleading partial disclosure" (Opp. at 31) which fails for the reasons discussed above. Plaintiff also fails to rebut that the "essential facts" doctrine is inapplicable, not only due to VWGoA's lack of pre-sale knowledge, but also because the doctrine does not apply under MA law where, as here, the plaintiff purchased a vehicle from a third-party dealer and not the defendant (MTD at 33). Even the cases Plaintiffs cite confirm this: *Block* dismissed claims for lack of duty to disclose where the vehicle was purchased from a third-party dealer, not the defendant manufacturer. *McCabe* and *Rezendes* confirm that the "essential facts" doctrine also does not apply to authorized dealer purchases, as the doctrine requires that defendant be a "party to a business transaction" and "aware of plaintiffs' subjective reason[s]" for purchase.

**The AZ CFA Claim Is Untimely.** The AC indisputably alleges that Plaintiff Smith "experienced the Defect" on May 13, 2023, and on May 14, 2023, "wrote to [VWGoA] customer care [to] report the crash and have them investigate the issue" (MTD at 34). Thus, the AC contradicts the argument that Smith could not have "discovered" her claim by May 14, 2023 (Opp. at 32). Since this action was filed more than one year later, the AZ CFA claim is time-barred.

**No Money Damages Under MN DTPA.** Plaintiff Gates does not challenge, and thus concedes, that any claim for money damages is unavailable under the MN

12

DTPA and should be dismissed (Opp. at 33).[7]

**The MA Ch. 93A Claim Fails.** While procedurally, this claim is permitted to be duplicative of other claims (Opp. at 33), this misses the point because Hakkaoui does not dispute *McCabe*'s holding that a Ch. 93A claim fails when, as here, "it is based solely on an underlying but meritless claim for fraud" (*Id.* at 34 n.34).

## V.    ALL CLAIMS FOR EQUITABLE RELIEF FAIL

**Failure to Establish the Lack of Adequate Alternative Legal Remedy.**

Plaintiffs do not dispute that all claims for equitable relief, including unjust enrichment and injunctive relief, require them to plead the lack of any adequate alternative legal remedy (MTD at 36; Opp. at 34). Plaintiffs argue that equitable and legal claims may be pled "concurrent[ly]" (*id.*), but even so, the equitable claims must still be properly and sufficiently pled on their own by "satisfying the requirement of alleging the inadequacy of legal remedies." *Rieger*, 2023 WL 3271116, at *8; *Hickman v. Subaru of Am., Inc.*, 2022 WL 11021043, at *12 (D.N.J. Oct. 19, 2022) ("The issue is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy"). Plaintiffs' failure to do so warrants dismissal of all equitable relief claims.

---

[7] VWGoA agrees that the CO CPA has recently been revised to permit money damages, so it withdraws that argument accordingly.

13

**The Unjust Enrichment Claims Fail for Additional Reasons.** Plaintiffs do not rebut the authorities holding, under all applicable state laws, that unjust enrichment claims cannot stand where, as here, the matters are the subject of a contractual express warranty (MTD at 38 n. 10). Plaintiffs argue that this does not apply where the warranty's validity "is challenged on unconscionability grounds," but here, Plaintiffs are not seeking to invalidate the warranties but, instead, to enforce them.[8] None of their cited cases (Opp. at 35, fn.35) address unjust enrichment claims where, as here, there is an existing express warranty applicable to the claims, and *In re Timing Chain* and *In re Mercedes-Benz* did not apply the state laws involved here.

Plaintiffs also fail to rebut the authorities holding that under CO, CT, FL, MA, ME, and OH law, unjust enrichment claims fail where, as here, Plaintiffs did not purchase the products directly from defendant and, thus, did not confer a "direct benefit" upon the defendant (MTD at 38). Plaintiffs cite *Knotts* (Opp. at 36), but that case applied MN law, and VWGoA did not seek to dismiss the MN claim on this basis. Similarly, *Volin* applies NJ law which is not involved here.

Finally, citing *Geriatrics, Inc. v. McGee*, 332 Conn. 1, 25 (2019), Plaintiffs argue that CT law recognizes claims based on "superior equitable entitlement" to funds indirectly conferred. However, even *McGee* acknowledged that this "highly

---

[8] The NVLWs are the subject of Plaintiffs' express warranty claims, and Plaintiffs only argue that their time/mileage limits should not be enforced (AC ¶¶ 198, 200).

14

restrictive" standard requires a plaintiff to have a "recognized" legal right to the funds giving it "priority" over the defendant, which Plaintiffs here neither plead nor support. *McGee* also did not involve products purchased from third-party retailers, which CT law holds not to confer a direct benefit upon defendant. MTD at 38; *Granito v. IBM*, 2003 WL 1963161, at * 2 (Conn. Super. Ct. Apr. 16, 2003).

**The Injunctive Relief Claims Fail for Additional Reasons.** Plaintiffs do not address, and apparently abandoned, all injunctive relief claims except one seeking to compel the "buy back or…repair" of the putative class vehicles (Opp. at 38). But this request also fails due to Plaintiffs' failure to adequately allege any defect in their vehicles and that they lack any adequate alternative legal remedy.

## VI.   THE NATIONWIDE CLASS CLAIMS SHOULD BE DISMISSED

Claiming a split of Third Circuit authority, Plaintiffs argue that the issue of standing to assert the nationwide class claims should await class certification (Opp. at 39). However, Article III standing should be addressed at the earliest time, and Plaintiffs ignore that in this District, all 13 of the automotive class action decisions that addressed this issue in the past five years have dismissed the nationwide class claims at the pleading stage for lack of standing (*see, e.g.*, MTD at 40).

## CONCLUSION

For the foregoing reasons, VWGoA respectfully requests that the AC be dismissed in its entirety, with prejudice, together with such other and further relief

15

as the Court deems just and proper.

April 10, 2026                         SHOOK, HARDY & BACON L.L.P.

                                      By: */s/ Homer B. Ramsey*
                                      Homer B. Ramsey
                                      *hramsey@shb.com*
                                      101 Hudson Street, 21st Floor
                                      Jersey City, NJ 07302
                                      Tel: (201) 660-9995

                                      Michael B. Gallub (*pro hac vice*)
                                      Daniel W. Robertson (*pro hac vice*)
                                      *mgallub@shb.com*
                                      *drobertson@shb.com*
                                      1 Rockefeller Plaza, Suite 2801
                                      New York, NY 10020
                                      Tel: (212) 989-8844

                                      *Attorneys for Defendant Volkswagen Group of
                                      America, Inc.*

16